532 S.E.2d 846 (2000)
NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff,
v.
Sherry GURLEY, Jimmy D. Gurley, Guardian Ad Litem for Kathryn Lynn Gurley, and Wendy Woolard, by and through her Guardian Ad Litem, Gregory James, Defendants.
No. COA99-861.
Court of Appeals of North Carolina.
July 18, 2000.
*847 Pinto Coates Kyre & Brown, PLLC, by Paul D. Coates and Nancy R. Meyers, Greensboro, for plaintiff-appellant.
Gaskins & Gaskins, P.A., by Herman E. Gaskins, Jr., Washington, for defendant-appellees Sherry Gurley and Kathryn Lynn Gurley.
Ward & Smith, P.A., by V. Stewart Couch and A. Charles Ellis, Greenville, for defendant-appellee Wendy N. Woolard.
LEWIS, Judge.
This is a case of first impression involving the interpretation of our underinsured motorist ("UIM") statute, which appears in section 20-279.21(b)(4) of our General Statutes. Specifically, we address whether the applicable limit of coverage under that statute is the UIM carrier's per-person or per-accident limit.
On 3 March 1996, an automobile owned and operated by defendant Kathryn Gurley collided with another automobile being driven by Charles Fornes. The accident resulted from Mr. Fornes' negligence. The three defendants, Kathryn Gurley and her two passengers, Sherry Gurley and Wendy Woolard, sustained serious injuries in the accident. At the time of the accident, Mr. Fornes was insured by Allstate Insurance Company ("Allstate") under a 25/50 liability policy (i.e. having applicable limits of $25,000 per person and $50,000 per accident). Pursuant to this policy, Allstate tendered its $50,000 limit to defendants, with the Gurleys each receiving $17,000 and Ms. Woolard receiving $16,000. Defendants then sought coverage under Sherry Gurley's UIM policy with North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau"). That policy had applicable limits of $50,000 per person and $100,000 per accident. Farm Bureau then *848 instituted this declaratory judgment action to ascertain whether the per-person or per-accident limit was the applicable UIM limit. The trial court concluded that the per-person limit applied. From this order, Farm Bureau appeals.
The North Carolina UIM statute necessitates a two-step analysis in resolving any UIM claims. First, we must address whether the insured is even eligible for UIM coverage. UIM coverage is available if two conditions are satisfied: (1) the negligent driver's automobile was an "underinsured highway vehicle"; and (2) the negligent driver's liability coverage has been exhausted. N.C. Gen. Stat. § 20-279.21(b)(4) (1999). Under our statute, an "underinsured highway vehicle" is:
a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.
Id. The respective liability and UIM limits are thus directly compared to each other. Because Mr. Fornes' insurance policy carried 25/50 liability coverage and Sherry Gurley's policy carried 50/100 UIM coverage, Mr. Fornes' automobile was an "underinsured highway vehicle." See generally Ray v. Atlantic Casualty Ins. Co., 112 N.C.App. 259, 261-62, 435 S.E.2d 80, 81, disc. review denied, 335 N.C. 559, 439 S.E.2d 151 (1993). Furthermore, given that Allstate tendered its $50,000 limit to defendants, Mr. Fornes' liability coverage has been exhausted. Thus, both conditions have been satisfied and defendants are entitled to UIM coverage.
Once UIM coverage is available, the second step in applying our UIM statute is determining how much coverage the insureds are entitled to receive under the UIM policy. Our statute outlines the limit as follows:
[T]he limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.
N.C. Gen.Stat. § 20-279.21(b)(4) (emphasis added). Thus, each defendant here is entitled to "the limit of underinsured motorist coverage applicable," less the amount each received from Allstate under Mr. Fornes' liability policy. Our task then is to determine that applicable UIM limit.
Farm Bureau contends that the applicable UIM limit is always the per-accident limit. Thus, in this case, defendants would be entitled to a total of $50,000 in UIM coverage (the $100,000 per-accident limit less the $50,000 combined they received from Allstate). Defendants, on the other hand, argue that the per-person limit is always the applicable limit. Under this interpretation, the two Gurleys would receive $33,000 each (the $50,000 per-person limit less the $17,000 already received) and Ms. Woolard would receive $34,000 (the $50,000 per-person limit less the $16,000 already received). Farm Bureau would thus be obligated to pay defendants $100,000 in total UIM coverage, which is within the $100,000 per-accident limit under the policy. The parties have cited Progressive Am. Ins. Co. v. Vasquez, 350 N.C. 386, 515 S.E.2d 8, reh'g denied, 350 N.C. 852, ___ S.E.2d ___ (1999), and Aills v. Nationwide Mutual Ins. Co., 88 N.C.App. 595, 363 S.E.2d 880 (1988), for their respective interpretations. We find neither case instructive, as each ultimately relies on the language of the UIM policy itself, rather than the UIM statute. Progressive, 350 N.C. at 396-97, 515 S.E.2d at 14; Aills, 88 N.C.App. at 598, 363 S.E.2d at 882.
Furthermore, neither party's construction is entirely correct. The applicable UIM limit will not always be the same in every circumstance; it will vary. Specifically, we conclude that the applicable UIM limit under N.C. Gen.Stat. § 20-279.21(b)(4) will depend on two factors: (1) the number of claimants seeking coverage under the UIM policy; and (2) whether the negligent driver's liability policy was exhausted pursuant to a per-person or per-accident cap.
*849 Quite intuitively, when only one UIM claimant exists, the per-person limit under the policy will be the applicable UIM limit. But when more than one claimant is seeking UIM coverage, as is the case here, how the liability policy was exhausted will determine the applicable UIM limit. In particular, when the negligent driver's liability policy was exhausted pursuant to the per-person cap, the UIM policy's per-person cap will be the applicable limit. However, when the liability policy was exhausted pursuant to the per-accident cap, the applicable UIM limit will be the UIM policy's per-accident limit.
By way of illustration, suppose A and B are seriously injured due to the negligence of C, who has 100/300 liability coverage. In that situation, the per-person liability cap applies, and A and B each would receive $100,000. Suppose further that A has UIM coverage for A and B of 250/750. If both A and B then claim under the UIM policy, the $250,000 per-person UIM cap would also apply, because that was the limit used to exhaust the liability coverage. Thus A and B would each receive $150,000 from the UIM carrier ($250,000 less the $100,000 already received).
In the case before us, however, we have three claimants who were compensated under the per-accident liability coverage limit. Now, the applicable UIM limit is also the per-accident UIM limit of $100,000. Accordingly, after the $50,000 liability payment is taken into account, defendants are entitled to a combined UIM compensation of $50,000, to be divided between the three of them.
Our interpretation of the applicable UIM limit under the statute makes sense both logically and pragmatically. Logically, our interpretation provides internal consistency with the rest of the UIM statute. For instance, to determine whether UIM coverage even applies, the statute explicitly mandates that the UIM limits be compared directly with the negligent driver's liability limits. N.C. Gen.Stat. § 20-279.21(b)(4); Harris v. Nationwide Mut. Ins. Co., 332 N.C. 184, 188, 420 S.E.2d 124, 127 (1992). Because our legislature requires a comparison between the liability and UIM limits in determining the availability of UIM coverage, we conclude the legislature intended a similar comparison in determining the limit of that coverage.
On the pragmatic side, a contrary interpretation of the applicable UIM limit would lead to absurd results. Specifically, interpreting the statute to mandate the per-person cap to be the applicable limit would result in defendants receiving more compensation than if Mr. Fornes had been either fully insured or uninsured altogether. For example, if Mr. Fornes' liability coverage had been 50/100 instead of 25/50, defendants would not have been entitled to any UIM coverage because his automobile would not have been an "underinsured highway vehicle." Thus, defendants would have received $100,000 total in liability coverage from his carrier. Likewise, if Mr. Fornes had been uninsured altogether, defendants would have again recovered a total of $100,000, this time in uninsured motorist ("UM") coverage. But under defendants' espoused interpretation, they would be entitled to $50,000 in liability coverage and $100,000 in UIM coverage, for a grand total of $150,000 in compensation. This would give defendants a windfall simply because they were involved in an accident with an underinsured motorist, as opposed to an insured or uninsured motorist. We do not believe our legislature intended such a result. After all, the purpose of UM and UIM insurance is the same"to compensate innocent victims of financially irresponsible motorists." Bray v. N.C. Farm Bureau Mut. Ins. Co., 341 N.C. 678, 684, 462 S.E.2d 650, 653 (1995). Since the purpose is the same, no windfall should be created as between the two.
In this regard, we find the words of the Colorado Supreme Court to be very insightful:
While we realize that the insureds will never be fully compensated for their loss, we see no evidence that the legislature intended to award the insureds more than they would have received if the tortfeasor had been insured or uninsured.
Union Ins. Co. v. Houtz, 883 P.2d 1057, 1065 (Colo.1994) (en banc); see also Mutual of Enumclaw Ins. Co. v. Key, 131 Or.App. 130, 883 P.2d 875, 877 (1994) ("UIM coverage is intended to place a policy holder in the same *850 position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage.") (emphasis added).
Although we have concluded that the UIM statute, as applied here, mandates use of the $100,000 per-accident UIM limit, this does not end our inquiry. Farm Bureau's policy itself of course could provide more UIM coverage than that required by statute. We therefore must next consider the policy language to determine whether that is the case.
Farm Bureau prescribes the following limit to its UIM coverage:
The most we will pay under this [UM/UIM] coverage is the lesser of the amount by which the:
a. limit of liability for this coverage; or
b. damages sustained by an insured for bodily injury;
exceeds the amount paid under all bodily injury liability bonds and insurance policies applicable to the insured's bodily injury.
(Emphasis added). Defendants again contend that the "limit of [UIM] liability" here is the per-person limit. We disagree.
This provision is the exclusive provision for calculating the amount of UIM coverage. It outlines a simple one-step formula: subtract the amount of liability coverage received from the maximum UIM limit. Here, that calculation requires subtracting the $50,000 defendants received from the $100,000 UIM per-accident limit.
Under defendants' interpretation, however, we would subtract the amount received by each defendant ($16,000 in the case of Ms. Woolard and $17,000 each in the case of the Gurleys) from the $50,000 per-person limit to compute the UIM coverage. But this interpretation never accounts for the $100,000 per-accident limit. Defendants' interpretation would thus force an extra step to be added to the UIM formula to ensure that the per-accident UIM limit is taken into accounta step that is nowhere contemplated in either the above provision or elsewhere in the policy. Specifically, that step would require adding the respective UIM coverages as to each claimant ($34,000 in the case of Ms. Woolard and $33,000 each in the case of the Gurleys) and then comparing this sum with the per-accident UIM limit to ensure that limit is not exceeded. As stated, this extra step is nowhere suggested within the UIM policy. Accordingly, under these facts, we construe the term "limit of [UIM] liability" here to mean the $100,000 per-accident limit.
We therefore reverse the trial court's entry of summary judgment in favor of defendants and remand for entry of summary judgment in favor of Farm Bureau.
Reversed and remanded.
Judges MARTIN and WALKER concur.