NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff v. SONDRA A. HAIGHT AND JIMMIE F. MILLS, Administrator of the Estate of James Robert Scott Haight, Defendants

No. COA01-1056

(Filed 6 August 2002)

**Insurance— UIM—multiple claimants—calculation of combined single limit**

In a declaratory judgment action brought by an insurance company to determine underinsured motorist coverage for injuries arising from an automobile accident, both policy and statute require calculation of the difference between the "combined single limit" under the policy ($500,000) and the total actually paid by the liability carrier ($200,000), with the result ($300,000) paid to the defendants on a pro rata basis. The policy here did not set per-person and per accident limits and the UIM policy's "combined single limit" more nearly resembles a per accident limit. Moreover, the purpose of uninsured and underinsured motorist insurance is the same, and applying the UIM limit indi-

vidually would result in an inconsistent recovery because the offset from the tortfeasor's liability policy would only be available in UIM cases.

Appeal by plaintiff from declaratory judgment entered 5 June 2001 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 June 2002.

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan and Jason James, for plaintiff-appellant.*

*Weaver, Bennett & Bland, P.A., by Michael David Bland, Benjamin L. Worley, and Roderick Ventura, for defendant-appellees.*

HUDSON, Judge.

Nationwide Mutual Insurance Company ("Nationwide") appeals from a declaratory judgment ordering it to pay defendants $300,000 in underinsured motorist ("UIM") coverage. For the reasons given below, we reverse and remand to the superior court for entry of a new order consistent with this opinion.

On 7 July 1996, a vehicle driven by Charles Weston Holleman failed to yield the right of way to a vehicle driven by Sondra A. Haight ("defendant Haight"), resulting in a collision. The vehicle driven by defendant Haight contained three passengers: Michael David Grant Haight, James Robert Scott Haight, and Ian McPherson. All of the occupants of defendant Haight's vehicle were injured, and James Robert Scott Haight died as a result of his injuries. Jimmie F. Mills is the Administrator of the Estate of James Robert Scott Haight (the "Estate").

At the time of the collision, Holleman's vehicle was insured by Aetna Casualty and Surety Company ("Aetna"), under a policy providing liability coverage with limits of $100,000 per person and $300,000 per accident. Defendant Haight's vehicle was insured by Nationwide, under a policy providing UIM coverage with a "combined single limit" of $500,000.

All of the occupants of defendant Haight's vehicle filed complaints seeking damages for personal injuries resulting from Holleman's negligence. Aetna paid $100,000 each from its liability coverage to settle the claims by defendant Haight and the Estate (collectively, "defendants"), and it paid $74,476.64 to settle

the claim by Ian McPherson. Michael David Grant Haight's claim has not been settled by Aetna.

After accepting $100,000 each from Aetna, defendants made claims for UIM coverage pursuant to the Nationwide policy. The parties submitted their claims to an arbitrator, who awarded damages in the amount of $225,000 to the Estate and in the amount of $525,000 to defendant Haight. A dispute then arose between the parties regarding the amount of UIM coverage available to defendants under the policy.

On 13 September 2000, Nationwide tendered $200,000 to defendants pursuant to the UIM coverage. On 19 September 2000, Nationwide filed a declaratory judgment action, asking the trial court to declare that the total amount of UIM coverage available to defendants was the $200,000 Nationwide had already tendered, and that Nationwide had fulfilled all of its obligations under the policy.

The trial court concluded the following:

1. That the total amount of Under-insured Motorist Coverage available under Nationwide's policy to all claimants is $500,000 per accident.

2. That the total amount of under-insured coverage available to Sondra Haight under the Nationwide Policy, after giving credit for the $100,000 payment she received from Aetna's liability policy, is $400,000.

3. That the total amount of under-insured coverage available to the Estate of James Robert Scott Haight under the Nationwide Policy, after giving a credit for the $100,000 payment it received from Aetna's liability policy is $400,000.

The court found that Nationwide was "obligated to pay to the Defendants the unpaid balance of the $500,000 Under-Insured Motorist Coverage under its policy." Taking into account the $200,000 Nationwide had already tendered, the court then ordered that "[t]he amount of $300,000 should be paid to Defendants and pro-rated between the Defendants based on the amount of each Defendant's UIM claim and the total amount of UIM coverage available under Nationwide's Policy." Nationwide appeals.

Nationwide argues that the trial court incorrectly calculated the amount of coverage available under the UIM policy. First, Nationwide argues that the trial court should have deducted the amount consti-

tuting the per-accident limit of the tortfeasor's liability policy ($300,000) from the UIM limit of $500,000, contending that this amount will be paid once all the claims are settled. Thus, Nationwide asserts, it is liable only for an amount of $200,000, the amount it has already tendered to defendants. Defendants dispute the contention that the liability policy's per-accident limit will be exhausted.

In the alternative, Nationwide argues that $274,476.64, the amount paid to all claimants so far by the tortfeasor's liability policy, should be deducted from the $500,000 UIM limit. Thus, Nationwide asserts, it is liable for the amount of $225,523.36. Since Nationwide has already tendered $200,000 to defendants, it contends under this approach that it should be ordered to pay only $25,523.36.

And finally, Nationwide contends that the minimum amount that should be deducted from the $500,000 UIM limit is $200,000, the amount paid by the liability policy to the two defendants. Thus, Nationwide argues that under no circumstances should it be required to pay a total of more than $300,000 in UIM proceeds. Defendants, on the other hand, maintain that the trial court's method of calculation was correct.

UIM insurance is governed by N.C. Gen. Stat. § 20-279.21(b)(4) (2001), which provides in relevant part that "the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident." We agree with defendants' contention that use of the singular "claimant" suggests that a separate calculation should be performed for each claimant. Therefore, we reject Nationwide's contention that the amount of UIM coverage should have been offset by either $300,000 (the per-accident limit of the tortfeasor's liability insurance, which Nationwide speculates will be exhausted once all four claimants have settled) or $274,476.64 (the total amount paid out so far by the tortfeasor's liability insurer to three claimants).

However, we disagree with defendants that the trial court's calculation was correct. It appears that the trial court performed a separate calculation for each defendant, subtracting $100,000 (the amount each defendant received from the liability policy) each time from $500,000, the "combined single limit" of UIM coverage in the policy. Because the Nationwide policy sets only one "combined single

limit" of $500,000 on its UIM coverage, rather than a per-person limit, we do not believe this method of computing the offset is consistent with the statute as applied to this policy.

The policy defines an "uninsured motor vehicle" to include an "underinsured motor vehicle." The policy contains the following endorsement pertaining to uninsured motorists coverage:

### D. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos," "insureds," premium paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the limit of UNINSURED MOTORISTS COVERAGE shown in the declarations.

The policy provides for an "uninsured motorists coverage combined single limit" of $500,000 and an "underinsured motorists coverage combined single limit" of $500,000. Thus, it is clear that under this policy there is only one limit on UIM coverage, in the amount of $500,000, and that this is the maximum amount of UIM coverage for any one accident.

Emphasizing the use in the statute of the singular "claim" and "claimant," defendants argue that a separate calculation must be performed for each claimant, and that $500,000 is the correct amount to be used as "the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident." N.C.G.S. § 20-279.21(b)(4). Defendants contend that *North Carolina Farm Bureau Mutual Insurance Co. v. Gurley*, 139 N.C. App. 178, 532 S.E.2d 846, *disc. review denied*, 352 N.C. 675, 545 S.E.2d 427 (2000), is dispositive of the issue, and that under *Gurley*, the superior court's calculation was correct. However, *Gurley* does not address the issue we face here. The UIM policy in *Gurley* contained both a per-person and a per-accident limit. At issue was whether the per-person or the per-accident limit in the UIM policy should be used in determining the amount of UIM coverage "applicable to the motor vehicle involved in the accident." *See id.* at 179, 532 S.E.2d at 847 ("Specifically, we address whether the applicable limit of coverage under [the UIM statute] is the UIM carrier's per-person or per-accident limit."). We held:

when the negligent driver's liability policy was exhausted pursuant to the per-person cap, the UIM policy's per-person cap will be the applicable limit. However, when the liability policy was

exhausted pursuant to the per-accident cap, the applicable UIM limit will be the UIM policy's per-accident limit.

*Id.* at 181, 532 S.E.2d at 849.

The UIM policy at issue here does not set two limits, and so the holding of *Gurley* does not necessarily compel the result defendants seek. In fact, the analysis in *Gurley* supports our result here. As we explained in *Gurley*, when the liability policy is exhausted pursuant to the per-accident limit, then the proper calculation of UIM coverage available is obtained by subtracting the per-accident limit of the tortfeasor's liability policy from the per-accident limit of the UIM policy. *See id.* at 182, 532 S.E.2d at 849. Thus, in such a case, despite the language of the statute, only one calculation is performed for all claimants combined. Here, the liability policy was exhausted pursuant to the per-person limit for these defendants, and we must decide how to offset those payments from the UIM "combined single limit," which more nearly resembles a per-accident limit.

Although the statutory language may be susceptible to the interpretation adopted by the trial court, we do not believe that interpretation reflects the purpose of the statute. " 'UIM coverage is intended to place a policy holder in the *same position* that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage.' " *Id.* at 183, 532 S.E.2d at 849-50 (quoting *Mutual of Enumclaw Ins. Co. v. Key*, 883 P.2d 875, 877 (Or. Ct. App. 1994)). If we agreed to apply the $500,000 UIM limit to each claimant individually, as the trial court did, these claimants would receive more in total insurance coverage than if the same claimants had been injured by an uninsured motorist. This is inconsistent with the statutory provisions. We note that where the UM and UIM limits are the same, the insurer will pay less on an underinsured claim, because of the offset from the tortfeasor's liability policy, than it will pay on an uninsured claim, where there are no proceeds to deduct.

For example, in this case, the superior court, using this method of calculation, applied a limit of $400,000 of UIM coverage to each defendant separately (the $500,000 limit on the UIM coverage less the $100,000 paid by the tortfeasor's policy). Thus, the court determined that defendant Haight should receive $400,000 of UIM coverage, since the damages left uncompensated by exhaustion of the tortfeasor's liability policy were in the amount of $425,000 (capped by the $400,000 limit); and the court determined that the Estate should receive

**NATIONWIDE MUT. INS. CO. v. HAIGHT**

[152 N.C. App. 137 (2002)]

$125,000, the amount of damages left uncompensated by exhaustion of the tortfeasor's liability policy. However, because the "combined single limit" of the UIM policy is $500,000, the court concluded that defendants should share $500,000 *pro rata*. Having already received a total of $200,000 from the tortfeasor's liability policy, under the superior court's analysis, the defendants would receive a total of $700,000 in insurance benefits.

On the other hand, if defendants had been injured by an uninsured motorist, they would have received no payment from a liability policy, and thus, there would have been no reason to perform two calculations. Each defendant would simply receive a *pro rata* share of $500,000. Hence, under the superior court's reasoning, defendants would receive an additional $200,000 of insurance coverage because of the collision with the underinsured motorist (Holleman), beyond what they would have received if Holleman had not been insured at all. Since we have stated that "the purpose of [uninsured motorist] and UIM insurance is the same," we do not believe the legislature intended such a result. *Id.* at 182-83, 532 S.E.2d at 849 (characterizing such a discrepancy as a "windfall" unintended by the legislature).

We believe that the statute and policy here require that we calculate the difference between the "combined single limit" of $500,000 under the UIM policy and the combined total actually paid to these two defendants by the liability carrier. Thus, the amount of UIM coverage available to defendants is $500,000 less $200,000, resulting in $300,000 to be shared on a *pro rata* basis.

Under this reasoning, the trial court should have concluded that Nationwide was liable for a payment of $300,000. Because Nationwide has already tendered $200,000, the trial court should have ordered Nationwide to pay an additional $100,000 to defendants, with the $300,000 total to be shared on a *pro rata* basis. Accordingly, we reverse the trial court's order and remand for entry of a new order in accordance with this opinion.

Reversed and remanded.

Judges GREENE and BIGGS concur.