# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01540-SCT

*UNITED SERVICES AUTOMOBILE ASSOCIATION*

*v.*

*DEBORAH C. STEWART, INDIVIDUALLY AND ON BEHALF OF OTHER WRONGFUL DEATH BENEFICIARIES OF ROBERT EARL STEWART, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2004 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GERALD LEE KUCIA |
| ATTORNEY FOR APPELLEE: | JAY MAX KILPATRICK |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 06/09/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     United Services Automobile Association (USAA) appeals to us from the Forrest County Chancery Court's grant of summary judgment in favor of its deceased insured's wrongful death beneficiaries, thus denying USAA's request for a set-off based on the liability coverage provided by a third-party tortfeasor's insurance carrier. Finding that the chancellor incorrectly granted summary judgment in favor of the plaintiffs, we reverse the chancellor's judgment and remand this case for further proceedings.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    On April 20, 2002, Robert Earl Stewart (Robert) was killed while operating his 1999 BMW motorcycle south on Interstate 59 in Hattiesburg, Forrest County, Mississippi. In a later-filed complaint, Deborah C. Stewart, individually and on behalf of other wrongful death beneficiaries of Robert (hereinafter "Deborah"), alleged that Joseph Rowell's negligent operation of his motor vehicle was the sole proximate cause of the accident and Robert's death.

¶3.    Prior to his death, Robert had contracted with USAA to provide his automobile insurance. Under automobile policy number 01341-71-64U-7101-4 ("the policy"), USAA provided insurance coverage[1] for five vehicles for the period from April 14, 2002, to October 14, 2002. Each vehicle had uninsured/underinsured motorists (UM/UIM) coverage in the amount of $10,000. USAA acknowledged that there was stacked UM/UIM coverage in the total amount of $50,000, but asserted that it was entitled to a set-off in the amount of the liability coverage under the Rowell insurance policy. Rowell was a minor who had coverage under a State Farm Insurance Company policy during the relevant time period, based on his parents' automobile policy number 2469-438-24H. This policy provided for liability coverage in the maximum amount of $25,000.

¶4.    On November 18, 2003, Deborah filed a Complaint for Declaratory Judgment in the Chancery Court of the First Judicial District of Hinds County pursuant to Miss. R. Civ. P. 57,

---

[1]The coverages provided included liability coverage for bodily injury and property damage, medical payments coverage, physical damage coverage, uninsured motorists coverage, and uninsured motorists property damage coverage.

arguing that USAA was not entitled to any "set-off" amount pursuant to the insurance policy purchased by Robert inasmuch as Deborah would not be "made whole" for Robert's death by the payment of the UM/UIM benefits in the amount of $50,000.[2]

¶5.     Upon timely motion by USAA, Deborah's case was transferred to the Chancery Court of Forrest County. After USAA answered the complaint, Deborah filed a motion for summary judgment, arguing that USAA was not entitled to offset the amount of liability coverage that Rowell held on April 20, 2002. USAA also filed a motion for summary judgment and claimed that it was entitled to off-set the amount of Rowell's liability coverage.

¶6.     After a hearing the chancery court granted Deborah's motion for summary judgment and denied USAA's motion for summary judgment. Relying on this Court's decision in *Hare v. State*, 733 So. 2d 277 (Miss. 1999), where we adopted the "made whole" rule of subrogation, the chancery court found that USAA was not entitled to a set off in the amount of the liability coverage held by Rowell.  The chancellor entered a final judgment pursuant to Miss. R. Civ. P. 54(b), and USAA timely appealed to us.

## DISCUSSION

¶7.     The standard of review for summary judgment is well-established by this Court:

> Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. To prevent summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under the rule. *Richmond v. Benchmark Constr. Corp.*, 692

---

[2]The propriety of bringing this suit in chancery court, as opposed to circuit court, has not been raised as an issue in this appeal, thus we need not address this issue today.

So.2d 60, 61 (Miss. 1997); *Lyle v. Mladinich*, 584 So.2d 397, 398 (Miss. 1991).

This Court employs a de novo standard in reviewing a lower court's grant of summary judgment. *Mississippi Ethics Comm'n v. Aseme*, 583 So.2d 955, 957 (Miss. 1991); *Cossitt v. Federated Guaranty Mut. Ins. Co.*, 541 So.2d 436, 438 (Miss. 1989). Evidentiary matters are viewed in a light most favorable to the nonmoving party. *Palmer v. Biloxi Regional Medical Center, Inc*., 564 So.2d 1346, 1354 (Miss. 1990). If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the summary judgment is affirmed. *Richmond*, 692 So.2d at 61; *Brown v. Credit Center*, Inc., 444 So.2d 358, 362 (Miss. 1984).

*Hare*, 733 So. 2d at 279.

¶8.　　Focusing on today's case, the applicable sections of Robert's policy are as follows:

PART C - UNINSURED MOTORIST COVERAGE
INSURING AGREEMENT

A.　UMBI Coverage.　We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI (bodily injury) sustained by a covered person and caused by an auto accident.
*****
E. We will pay under these coverages only after the limits of liability under any of the following that are applicable to the uninsured motor vehicle have been exhausted by payment of judgment or settlements:

1.　Liability bonds or policies; or

2.　Deposits of cash or securities.

LIMIT OF LIABILITY
*****
D.　Whether Paragraph A or Paragraph B applies[3]:

---

[3]Paragraph A applies if the uninsured motor vehicle is not a "covered" vehicle and Paragraph B applies if the uninsured motor vehicle is "your covered auto."

4

> 2. The limits of liability under UMBI Coverage (each person each accident) and UMPD Coverage shall be reduced by all sums paid because of BI or PD by or on behalf of the owner or operator of the uninsured motor vehicle.

NON-DUPLICATION

No covered person will be entitled to receive duplicate payments under this coverage **for the same elements of loss** which were:

> A. Paid because of the BI or PD by or on behalf of persons or organizations who may be legally responsible.

(Emphasis Added).[4]

¶9. Based on the stacked UM/UIM coverage available, USAA, pursuant to the policy provisions, tendered to Deborah the amount of $50,000, minus a "set off" of $25,000 based on the liability coverage provided under Rowell's insurance policy. Deborah refused USAA's tender of payment, arguing that the $50,000 available in UM/UIM benefits from USAA and the $25,000 available from the at-fault driver did not reflect the true present value of Robert's lost income.

¶10. The chancellor held that USAA would typically be entitled to a set-off on most of the UM claims made under its policies. The chancellor stated that because this was a "catastrophic situation which involve[d] the death of a gainfully employed 45 year-old male who made approximately $25,000 per year," the set-off asserted by USAA was not enforceable until Deborah, as the insured, was made whole.

---

[4]The relevant provisions of the USAA policy in today's case are almost identical to the provisions of the USAA policy in *Wise v. United Services Auto. Ass'n*, 861 So.2d 308 (Miss. 2003).

5

¶11. The "made whole" rule is "the general principle that an insurer is not entitled to equitable subrogation until the insured has been fully compensated." ***Hare***, 733 So. 2d at 281. In ***Hare***, this Court adopted the "made whole" rule and held that:

> [I]t is not to be overridden by contract language, because the intent of subrogation is to prevent a double recovery by the insured, especially here as expressly stated in the State Health Plan. Until the insured has been fully compensated, there cannot be a double recovery. Otherwise, to allow the literal language of an insurance contract to destroy an insured's equitable right to subrogation ignores the fact that this type of contract is realistically a unilateral contract of insurance and overlooks the insured's total lack of bargaining power in negotiating the terms of these types of agreements.

*Id.* at 284 (citations omitted). Hare, insured by the Mississippi State and Public School Employees' Health Plan, was involved in a motor vehicle accident with an uninsured motorist. *Id.* at 278. Hare was also insured under an UM policy by Progressive Insurance, with policy limits of $10,000 per person and $20,000 per accident. *Id.* at 279. The Court determined that the State could not assert a subrogation claim against the UM benefits collected by Hare because Hare would not be "made whole." *Id.* Hare suffered $8,667.50 in medical expenses, $6,056.50 of which was paid by the State. *Id.* at 284. Expert witnesses, through affidavits, stated that Hare's potential recovery would fall between $50,000 and $175,000. *Id.*

¶12. However, USAA reminds us that while it can be argued that most of our UM/UIM cases which acknowledge an insurance company's right of set-off predate our 1999 decision in ***Hare***, this Court has affirmed a UM/UIM carrier's right of set-off on at least two occasions since ***Hare***, citing ***Wise v. United Services Auto. Ass'n***, 861 So.2d 308 (Miss. 2003); and, ***City of Jackson v. Perry***, 764 So.2d 373 (Miss. 2000).

6

¶13.    Discussing these cases in reverse order, *Perry* involved a suit against the City of Jackson based on a minor child's sustaining injuries in an automobile collision with a vehicle driven by a Jackson police officer.  We stated that the case "presents issues concerning the interplay between our underinsured motorist statutes and those governing sovereign immunity."  764 So.2d at 375. We certainly acknowledged the right of set-off in appropriate cases, but on the issue of set-off in *Perry*, we held that set-off (or offset) was inapplicable since there was no record that the UM carrier's insurance policy had an offset provision.  *Id.* at 383.

¶14.    In *Wise*, we stated:

> It is undisputed that the Wises had UM coverage limits of $300,000 per person and $600,000 per accident.  It is also undisputed that Bostic's vehicle was covered by a USF & G single limit liability policy of $300,000.  The question this Court must answer is in determining whether a vehicle is an uninsured vehicle pursuant to statute, which amount is used when multiple claimants are involved – the per person or the per accident limit?

861 So.2d at 312.  After discussing some of our decisions in UM/UIM cases, we stated:

> While the above cases are illustrative of this State's history of uninsured motorist law, the cases do not provide a clear answer as to whether the per person or the per accident limit should be used to determine if the tortfeasor is an uninsured motorist when there are two or more claimants under the same uninsured motorist policy.

*Id.* at 317.

¶15.    In finding that the Wises were entitled to UM benefits, we relied on two cases from our sister state of North Carolina; namely, *Nationwide Mut. Ins. Co. v. Haight*, 152 N.C. App. 137, 566 S.E.2d 835 (2002); and, *North Carolina Farm Bureau Mut. Ins. Co. v. Gurley*, 139

7

N.C. App. 178, 532 S.E.2d 846 (2000). After a thorough discussion of *Haight* and *Gurley*, we stated:

> Using the North Carolina cases as guidance, Bostic's single liability limit of $300,000 is equivalent to a per accident limit. Comparing that limit to the per accident limit of the Wises' USAA policy of $600,000, Bostic's vehicle should be considered an underinsured motor vehicle pursuant to statute. Therefore, the Wises are entitled to uninsured motorists benefits.

816 So. 2d at 319.

¶16. In applying USAA policy provisions almost identical to the USAA policy provisions in today's case, we held that USAA was entitled to an offset, and stated:

> [T]he trial court was correct in determining that the Wises no longer have any uninsured motorist claims available to them. The Wises have admitted that they have been paid, through settlements, an amount which exceeds their available uninsured motorist benefits; therefore, USAA is no longer liable for any uninsured motorist benefits.

*Id.*

¶17. We are firmly convinced that the learned chancellor attempted to fairly decide the case sub judice based on what he genuinely believed to be the applicable law. However, we are constrained to find that the chancellor incorrectly decided this case by applying *Hare*, instead of *Wise* and its predecessor cases.

¶18. As already noted, *Hare* was a subrogation case. We have defined subrogation as "'the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. Words and Phrases Vol. 7, p. 6722.'

8

*Trust Company v. Peters*, 72 Miss. 1058, 18 So. 497, 30 L.R.A. 829." ***First Nat'l Bank of Jackson v. Huff***, 441 So.2d 1317, 1319 (Miss. 1983). While we reaffirm our decision in ***Hare*** to stand for the proposition that the "made whole" rule may be appropriately applied to certain subrogation cases, we unhesitatingly state here that ***Hare*** did not overrule the long line of UM/UIM cases, many of which were discussed in ***Wise***, which was decided more than four years after ***Hare***. If we had intended such a result in ***Hare***, we would have said so in express language overruling prior case law. ***Wise*** was not a subrogation case, and neither is today's case.

¶19.   Although there is a dispute between Deborah and USAA has to what the parties had stipulated to in the trial court, we quote only so much as is necessary here concerning what USAA admits to us:

> USAA further admits that Mr. Stewart was gainfully employed with the State of Mississippi at Camp Shelby making approximately $25,000 a year at the time of his death. USAA also admits that $75,000 ($50,000 offered pursuant to the USAA policy and $25,000 available from the at-fault driver) does not reflect the true present value of the lost income stream suffered due to the death of Mr. Stewart. ***USAA denies that the "made-whole" doctrine is applicable to the Plaintiffs' claim for uninsured/underinsured motorist benefits.***

(Emphasis in original).

¶20.   We concluded in ***Hare***: "[T]his Court adopts the "made whole" rule of subrogation, because the general intent of subrogation . . . is to prevent a double recovery by the insured. Until the insured has been fully compensated, there cannot be a double recovery." 733 So.2d at 285.

¶21.    There can be no doubt that Deborah will not be made whole by the $50,000 UM/UIM benefits and the $25,000 liability coverage from the at-fault driver.    However, we have to recognize that in many UM/UIM cases, it is virtually impossible for the injured insured(s) to be made whole.  It is hardly uncommon for the injured insured(s) to incur injuries and damages far in excess of the available insurance coverage.    In *State Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So.2d 1159 (Miss. 1985), by applying the provisions of the UM statute and the specific insurance policy, we allowed a set-off by way of a reduction of UM benefits based on the amount of liability coverage provided under the tortfeasor's policy.  If we were to expand the "made whole" rule to apply not only to certain subrogation cases, but also to UM/UIM cases, we would in effect overrule *Kuehling* and its progeny, including our recent decision in *Wise*. This, we refuse to do.  If we overruled this long line of cases, such action on our part would understandably create chaos for the trial bench and bar, which have a right to expect consistency from this Court.  Our application of stare decisis is necessary, inter alia, so that trial courts can make correct decisions and lawyers can properly advise their clients.

## CONCLUSION

¶22.    Applying *Wise* and its predecessor cases, USAA is entitled to a set-off of $25,000, based on the liability coverage provided under the Rowell insurance policy.  Since the chancellor held otherwise, we reverse the chancellor's judgment and remand this case to the Forrest County Chancery Court for proceedings consistent with this opinion.

¶23.    **REVERSED AND REMANDED.**

10

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**