WALLER, Chief Justice,
dissenting:
¶ 29. Because I would find that Stark-ville is not entitled to discretionary-function immunity in this case, I must respectfully dissent.
¶ 30. As explained in my separate opinion in Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014), this Court has followed the analysis of the federal courts in analyzing discretionary-function immunity under the Mississippi Tort Claims Act (“MTCA”) for the last fifteen years. See Jones v. Miss. Dep’t of Transp., 744 So.2d 256, 260 (Miss.1999) (citing U.S. v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), abrogated on other grounds by Strange ex rel. Strange v. Itawamba County Sch. Dist., 9 So.3d 1187, 1192 (Miss.2009)). The reason for this decision is simple: the MTCA’s discretionary-function exception is identical to its counterpart in the Federal Tort Claims Act, and it is not only logical, but beneficial, to apply our statute in the same manner as the federal courts have done. Compare Miss.Code Ann. § 11 — 46—9(1)(d) (Rev. 2012) with 28 U.S.C. 2680(a) (2006). The Legislature has declined to correct this Court’s interpretation of the discretionary-function exception, even though Section 11-46-9 has been amended since our adoption of the public-policy function test in Jones. See 2007 Miss. Laws Ch. 582 § 21.
¶ 31. The majority’s opinion today departs from this precedent without regard for the fundamental legal doctrine of stare decisis. The doctrine of stare decisis “proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike.” State ex rel. Moore v. Molpus, 578 So.2d 624, 634 (Miss.1991). “Our application of stare decisis is necessary, inter alia, so that trial courts can make correct decisions and lawyers can properly advise their clients.” United Servs. Auto. Ass’n v. Stewart, 919 So.2d 24, 30 (Miss. 2005).
In stare decisis generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is “pernicious,” Stone v. Reichman-Crosby Co., 43 So.2d 184,190 (Miss.1949); “impractical,” Robinson v. State, 434 So.2d 206, 210 (Miss.1983) (Hawkins, J., concurring); or is “mischievous in its effect, and resulting in detriment to the public.” Childress v. State, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for “evils attendant upon a continuation of the old rule.” Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 467 (Miss.1983).
Molpus, 578 So.2d at 635. Furthermore, even where this Court determines a prior interpretation of a statute to be incorrect, “we will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of stare decisis, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation.” Caves v. Yarbrough, 991 So.2d 142, 154 (Miss.2008) (holding that stare decisis required adherence to a judicially created discovery rule under the MTCA, where the Legislature had reenacted the statute in question -without countermanding this Court’s prior interpretations).
¶ 32. A thorough review of the majority opinion reveals no mention of the Legislature’s reenactment of Section 11-46-9 eight years after this Court’s holding in Jones, which serves as evidence of the Legislature’s approval and incorporation of the public-policy function test into the stat *1116 ute. See Caves, 991 So.2d at 154. The majority does not explain how our established rule for analyzing discretionary-function immunity is erroneous as an initial matter. And even assuming arguendo that our prior interpretation of the law has been incorrect, the majority fails to point out how our continued adherence to precedent is in any way impractical, pernicious, mischievous in effect, or detrimental to the public. On the contrary, I view our adoption of the public-policy function test as a well-reasoned decision that should not be abandoned simply because some members of this Court do not agree on its intricacies. Erasing fifteen years of precedent on this issue, on the other hand, is a careless measure that will likely “create chaos for the trial bench and bar, which have a right to expect consistency from this Court.” Stewart, 919 So.2d at 30. Ultimately, though, the majority is simply applying the first prong of the public-policy function test without saying so. To this extent, I agree that an analysis of the first prong of the public-policy function test is dispositive in this case. I would find that, under the statutes and regulations cited by the majority, the City of Starkville’s maintenance of its sewage system fails this prong.
¶ S3. Under the first prong of our public-policy function test, a duty is considered ministerial rather than discretionary if “its performance [is] required at a time and in a manner or upon conditions which are specifically designated.” L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1141 (Miss.1999). This Court has never held that every governmental act related to sewage maintenance is discretionary, as the majority suggests. In Fortenberry v. City of Jackson, 71 So.3d 1196, 1203 (Miss.2011), this Court found that “[t]he plaintiffs alleged no law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems.”[10] However, it is clear from the majority’s own opinion that such laws and regulations do exist. The MDEQ regulations cited by the majority require all operators of sewage systems to properly operate and maintain their facilities at all times in compliance with their wastewater permits. See Miss. Admin. Code 11-6:1.1.4(A)(18). See also 40 C.F.R. § 122.41(e). This Court has interpreted similar statutory language as imposing a ministerial duty of maintenance on a governmental entity. See Little, 129 So.3d at 135 (interpreting Section 65-1-65 of the Mississippi Code, which provides, “It shall be the duty of the state highway commission to have the state highway department maintain all highways ... in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times,” as imposing a ministerial duty). This regulatory language plainly requires sewage maintenance to be performed at a specific time — “at all times” — and in a specific manner — “[i]n a manner and to the extent required by the metropolitan area plan” and to “achieve compliance with the conditions of the permit.” Miss. Admin. Code 11-6:1.1.4(A)(18); Miss.Code Ann. § 21-27-189(b) (Rev. 2007). Thus, sewage-system maintenance fails the first prong of the public-policy function test, as the above regulatory scheme removes any element or choice or judgment from the matter. See Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 537, 108 S.Ct. 1954, 100 *1117 L.Ed.2d 581 (1988). The majority’s disposal of the second prong of the public-policy test is unwarranted, because a discussion of that prong is unnecessary for the disposition of this case. Nevertheless, I stand firm in my belief that this Court should remain faithful to precedent, absent strong countervailing considerations.
¶ 34. For the foregoing reasons, I respectfully dissent.
RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.

. The majority implicitly overrules Forten-berry to the extent that it relied on this Court’s previously well-established test for analyzing discretionary-function immunity. See Maj. Op. at 1112. I simply would hold that Forten-berry cannot be read as a pronouncement that all acts of municipal sewage maintenance are discretionary, as such an interpretation would require the lower courts to ignore the very regulations cited by both myself and the majority when analyzing these types of cases.