IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-300

No. COA21-326

Filed 3 May 2022

Davie County, No. 19 CVS 470

GILBERT DEAN TUTTEROW, Administrator of the Estate of Vivian Lynn Tutterow,
Plaintiff,

v.

BRIAN K. HALL, KRIS H. HALL; RANDY HALL AUTOMATIVE, LLC; STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and HORACE MANN
PROPERTY AND CASUALTY INSURANCE COMPANY, Defendants.

Appeal by plaintiff from order entered 7 January 2021 by Judge Joseph N. Crosswhite
in Davie County Superior Court. Heard in the Court of Appeals 9 February 2022.

> *Martin & Van Hoy, LLP by Henry P. Van Hoy, II; Katherine Freeman, PLLC*
> *by Katherine Freeman, for plaintiff.*
>
> *McAngus, Goudelock & Courtie, PLLC by Jeffrey B. Kuykendal, for defendant*
> *State Farm Mutual Automobile Insurance Company.*
>
> *Teague, Rotenstreich, Stanaland, Fox & Holt, PLLC by Kara V. Bordman,*
> *Kenneth B. Rotenstreich, and Robert C. Cratch, for defendant Horace Mann*
> *Property and Casualty Insurance Company.*

DIETZ, Judge.

¶ 1 This appeal concerns the proper calculation of underinsured motorist or "UIM"
coverage in a case involving both multiple underinsured tortfeasors and multiple
UIM insurance policies.

¶ 2      The dispute centers on a provision of the Motor Vehicle Safety and Financial Responsibility Act addressing this issue. As with other portions of the Act, this statutory language is incorporated by law into every automobile insurance policy in our State.

¶ 3      The language provides that "if a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy." N.C. Gen. Stat. § 20-279.21(b)(4).

¶ 4      Here, there were two negligent drivers who caused the accident, each with exhausted liability policies of $100,000. There were also two applicable UIM policies, each with $100,000 in UIM coverage. As explained below, the trial court properly applied the plain language of the statute and determined that the amount of UIM coverage available under this statutory calculation "is $0.00," which is the difference between the $200,000 paid under the exhausted liability policies and the combined limits of the UIM policies.

¶ 5      The trial court's calculation follows the statute's plain language and is consistent with the purpose of underinsured motorist coverage identified in our State's case law. We therefore affirm the trial court's judgment.

**Facts and Procedural History**

¶ 6        In 2014, Vivian Tutterow was killed in a car accident. At the time, Tutterow was a passenger in a car driven by Pamela Crump. For purposes of this declaratory judgment action, the parties stipulated that both Crump and Defendant Brian Hall, the driver of a second vehicle, negligently caused the accident.

¶ 7        The parties involved in this accident had the following relevant insurance coverage: Crump had an auto policy issued by Horace Mann with $100,000 per person liability limits and $100,000 per person UIM coverage. Hall had an auto policy issued by Nationwide with $100,000 per person liability limits.

¶ 8        Tutterow, as a passenger in Crump's car, was covered under Crump's $100,000 per person UIM coverage. Tutterow also had an auto policy issued by State Farm with $100,000 per person UIM coverage.

¶ 9         In 2015, Plaintiff, as the administrator of Tutterow's estate, brought a wrongful death action against Crump, Hall, and others. On 10 October 2016, Horace Mann tendered the $100,000 limits of its liability policy on behalf of Crump. On 18 October 2016, Nationwide tendered the $100,000 limits of its liability policy on behalf of Hall.

¶ 10        Several weeks later, Plaintiff notified the UIM carriers of these tenders but advised that Plaintiff had not accepted the tendered liability limits. At that time, the

two UIM carriers—Horace Mann and State Farm—did not advance coverage under the UIM policies.

¶ 11     In June 2017, Plaintiff informed the UIM carriers that he had accepted Horace Mann's tender of the full $100,000 liability limit of Crump's liability policy.

¶ 12     In September 2017, State Farm advanced $100,000 to Tutterow's estate under its UIM policy while expressly reserving its "rights to recoup funds" should Plaintiff recover from Hall's liability insurer, Nationwide, "whether such payments are made pursuant to a settlement, a judgement or otherwise."

¶ 13     In July 2019, Plaintiff informed the UIM carriers that he reached a settlement with Hall that included a payment from Nationwide of the $100,000 limits of Hall's liability policy. The following week, State Farm requested that Plaintiff reimburse the $100,000 that it had advanced in late 2017. Those funds were placed in escrow and Plaintiff brought this declaratory judgment action seeking a declaration of the UIM carriers' coverage obligations and State Farm's right to reimbursement.

¶ 14     The parties later filed cross-motions for summary judgment. After a hearing, the trial court entered an order granting summary judgment in favor of the UIM carriers on the ground that the amount of UIM coverage available "is $0.00." Plaintiff timely appealed.

**Analysis**

¶ 15 This case concerns a type of insurance coverage known as underinsured motorist or "UIM" coverage. UIM coverage serves "as a safeguard when tortfeasors' liability policies do not provide sufficient recovery." *North Carolina Farm Bureau Mut. Ins. Co., Inc. v. Lunsford*, 378 N.C. 181, 2021-NCSC-83, ¶ 13. UIM coverage is governed by the Motor Vehicle Safety and Financial Responsibility Act—a lengthy, complicated statute that explains how UIM coverage and other related insurance operates. N.C. Gen. Stat. § 20-279.21. The provisions of this statute are "written into every policy of automobile insurance" as a matter of law. *North Carolina Farm Bureau Mut. Ins. Co., Inc. v. Dana*, 379 N.C. 502, 2021-NCSC-161, ¶ 9.

¶ 16 Under the statute, the calculation of applicable UIM coverage has three basic steps. First, the reviewing court must determine if a tortfeasor's vehicle meets the definition of an "underinsured highway vehicle." If so, the court must determine if the limits of that tortfeasor's liability policy are exhausted. Finally, if those liability limits are exhausted, the court must calculate the amount of coverage that is available under the applicable UIM policy. *Id.* ¶ 11.

¶ 17 Here, the trial court concluded—and the parties concede—that the first two steps of this analysis are satisfied and that UIM coverage is therefore triggered. All that remains is the calculation of the amount of UIM coverage available.

¶ 18    The crux of this case is how to calculate that available UIM coverage when there are both multiple underinsured tortfeasors and multiple UIM insurance policies. Here, for example, there are two tortfeasors whose liability insurers exhausted their policy limits by tendering $100,000 each. There are also two UIM carriers that both provided Tutterow with UIM coverage of $100,000 per person.

¶ 19    The parties acknowledge that the calculation of UIM coverage in this scenario is governed by a specific section of the Motor Vehicle Safety and Financial Responsibility Act found in Section 20-279.21(b)(4) of our General Statutes:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident. Furthermore, if a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy . . .

N.C. Gen. Stat. § 20-279.21(b)(4).

¶ 20    Our State's appellate courts have not yet interpreted how this statutory language applies in a case involving both multiple underinsured tortfeasors and multiple UIM insurance carriers. The parties acknowledge that we interpret this provision as we would any other statute—by first examining the plain language of

the statute and then, if that language is ambiguous, turning to other interpretive tools. *Dana*, ¶ 16.

We agree with the trial court that this statutory language is unambiguous and supported entry of summary judgment in favor of the UIM carriers. The first sentence of this provision addresses a scenario in which the claimant is covered by only one UIM policy: "In any event, the limit of *underinsured motorist coverage* applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and *the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident*." N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added).

The word "claim" as used in this sentence means the assertion that the claimant "has sustained bodily injury" or is "injured" in an automobile collision. N.C. Gen. Stat. § 20-279.21(b)(3), (4). Moreover, the references to "underinsured motorist coverage" and "the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident"—with the word "coverage" in the singular—signals that there is only one UIM policy at issue, that being the UIM policy for the vehicle the claimant occupied at the time of the accident.

The second sentence, by contrast, addresses a scenario in which the claimant is covered by more than one UIM policy: "Furthermore, *if a claimant is an insured under the underinsured motorist coverage on separate or additional policies*, the limit

of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and *the total limits of the claimant's underinsured motorist coverages* as determined by combining the highest limit available *under each policy*." *Id.* (emphasis added).

¶ 23        The use of the transitional word "furthermore" indicates that this second sentence provides an additional factor or consideration that distinguishes it from the proceeding statement. *See Merriam-Webster's Collegiate Dictionary* 474 (10th ed. 1993). That additional consideration—meaning the thing that distinguishes the second sentence from the first—is the existence of multiple UIM policies that apply to the claimant. This is confirmed by the grammar of this second sentence, which refers to the "total limits of the claimant's underinsured motorist coverages" in the plural form, in contrast to the first sentence, which refers to the "limit of underinsured motorist coverage" in the singular.

¶ 24        In the scenario addressed in this second sentence, involving multiple applicable UIM policies, the statute provides an unambiguous method to calculate the applicable limit of combined UIM coverage: it is the difference between the total amount paid under all exhausted liability policies and the total limits of all applicable UIM policies.

The trial court properly applied this statutory provision here. The court calculated the total amount paid under the exhausted liability policies as $200,000 and calculated the total limits of the claimant's underinsured motorist coverages as $200,000. The court then determined that the total limits of UIM coverage is the difference between these two totals and, therefore, the "available UIM coverage is $0.00." This determination properly applied the statute's plain language and is correct.

Although we hold that the statute's plain language is unambiguous and compels this result, we note that this interpretation also is consistent with the purpose of the statute. As noted above, UIM coverage serves "as a safeguard when tortfeasors' liability policies do not provide sufficient recovery." *Lunsford*, ¶ 13. The purpose of UIM coverage is to put the insured in a position where total insurance coverage for injuries sustained in an automobile accident is no less than the amount of UIM coverage. *Nationwide Mut. Ins. Co. v. Haight*, 152 N.C. App. 137, 142, 566 S.E.2d 835, 838 (2002). That is precisely what the plain language of this statute accomplishes. Here, for example, the UIM carriers provided combined UIM coverage ensuring that, in the event of bodily injury or death in an auto accident, there would be at least $200,000 in available insurance coverage. That is the amount of liability coverage provided in this case. Accordingly, we affirm the trial court's entry of summary judgment in favor of the UIM carriers on this issue.

¶ 27    Plaintiff also argues that the trial court's order failed to acknowledge that State Farm waived its subrogation rights and thus cannot be entitled to reimbursement of the $100,000 in UIM coverage that it advanced while reserving a right to reimbursement.

¶ 28    Under the Motor Vehicle Safety and Financial Responsibility Act, no insurer "shall exercise any right of subrogation. . . where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice." N.C. Gen. Stat. § 20-279.21(b)(4). Plaintiff contends that State Farm's advance of its $100,000 in UIM coverage occurred many months after the tender of the full limits by the liability carriers, and thus waived State Farm's subrogation rights as a matter of law.

¶ 29    The trial court properly determined that this statutory provision is inapplicable. As explained above, when the underlying liability insurers exhausted the limits of their two $100,000 policies by tendering the full limits, the UIM carriers had no duty to advance any payments because they owed nothing under their policies. Because State Farm did not have any obligation to advance payment under its UIM policy, the statutory provision governing waiver of subrogation rights upon failure to timely advance payment does not apply.

¶ 30       Plaintiff does not assert any other basis to challenge the trial court's ruling with respect to State Farm's right to reimbursement, and we therefore affirm this portion of the trial court's order as well. *See* N.C. R. App. P. 28(b).

## Conclusion

¶ 31       We affirm the trial court's order.

AFFIRMED.

Judges MURPHY and JACKSON concur.