IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-161

 No. 374PA19

 Filed 17 December 2021

 NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.

 v.
 WILLIAM THOMAS DANA, JR., INDIVIDUALLY and as ADMINISTRATOR OF
 THE ESTATE OF PAMELA MARGUERITE DANA

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, 267 N.C. App. 42 (2019), affirming an order entered on 2

 August 2018 by Judge Eric C. Morgan in Superior Court, Forsyth County. Heard in

 the Supreme Court on 19 May 2021.

 William F. Lipscomb for plaintiff-appellant.

 C. Douglas Maynard, Jr., for defendant-appellee.

 Bailey & Dixon, L.L.P., by J.T. Crook, Philip A. Collins, and David S. Coats,
 for North Carolina Association of Defense Attorneys, amicus curiae.

 ERVIN, Justice.

¶1 The issue before us in this case involves the amount of underinsured motorist

 coverage that should be distributed to defendant William Thomas Dana, Jr.,

 individually and as administrator of the estate of Pamela Marguerite Dana, from the

 policy of automobile liability insurance that Ms. Dana had purchased from plaintiff

 North Carolina Farm Bureau Mutual Insurance Company, Inc., for the purpose of
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 compensating them for the injuries that they sustained in an accident that resulted

 from the negligence of Matthew Bronson. After careful consideration of the record in

 light of the applicable law, we conclude that the Court of Appeals erred by affirming

 an order entered by the trial court granting summary judgment in favor of the Danas

 and against Farm Bureau on 2 August 2018 in reliance upon its prior decision in N.C.

 Farm Bureau Mut. Ins. Co., Inc. v. Gurley, 139 N.C. App. 178 (2000); that its decision

 in favor of the Danas should be reversed; and that this case should be remanded to

 the Court of Appeals for further remand to Superior Court, Forsyth County, for the

 entry of a judgment consistent with the principles enunciated in this opinion.

¶2 On 3 February 2016, Mr. Bronson, who was intoxicated, was driving in a

 southbound direction on Old Salisbury Road in Winston-Salem when the vehicle that

 he was operating entered the northbound lane and collided with a vehicle owned by

 Ms. Dana, resulting in serious injuries to Ms. Dana and Mr. Dana, who was a

 passenger in Ms. Dana’s vehicle. The injuries that Ms. Dana sustained ultimately

 proved fatal. Jessica Jones, a passenger in Mr. Bronson’s vehicle, was also killed in

 the accident. A vehicle owned and operated by Joshua Ryan Jeffries was damaged in

 the accident as well.

¶3 At the time of the accident, Mr. Bronson’s vehicle was covered by a policy of

 automobile insurance that had been issued by Integon National Insurance Company

 which provided bodily injury liability coverage with limits of up to $50,000 per person
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 and $100,000 per accident. Subject to approval by the Superior Court, Integon

 proposed to apportion the full amount of the available per accident coverage as

 follows:

 William Dana $32,000
 Estate of Pamela Dana $43,750
 Estate of Jessica Jones $23,500
 Joshua Jeffries $750
 Total $100,000

¶4 At the time of the accident, Ms. Dana was insured under a policy of automobile

 liability insurance issued by Farm Bureau that included underinsured motorist

 coverage with limits of $100,000 per person and $300,000 per accident. In response

 to a claim submitted by Ms. Dana’s estate, Farm Bureau offered to pay the full per-

 person limit to both Mr. Dana and the Estate, less the amount that had been received

 from Integon’s liability coverage, resulting in the following distribution:

 William Dana $100,000 per-person underinsured
 limit
 -$32,000 Integon coverage
 $68,000 total underinsured payment

 Estate of Pamela Dana $100,000 per-person
 underinsured limit
 -$43,750 Integon coverage

 $56,250 total underinsured
 payment
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

¶5 In response, Mr. Dana argued that he and the Estate were entitled to the full

 amount of per-accident underinsured motorist coverage set out in the policy, less the

 amount of liability coverage that had been provided by Integon and the amount that

 had already been offered by Farm Bureau. As a result, Farm Bureau would be

 obligated to pay a total of $124,250 to the Danas under its own proposal, while it

 would be obligated to provide a total of $200,000 in underinsured motorist coverage

 to the Danas under the proposal that they submitted, which consisted of the $300,000

 per-accident limit provided under the Farm Bureau policy less the $100,000 in

 liability coverage provided by Integon. As a result, the Danas claimed to be entitled

 to an additional $74,750 in underinsured motorist coverage over and above the

 amount that Farm Bureau had already tendered to them.

¶6 On 7 August 2017, Farm Bureau filed a complaint seeking a declaratory

 judgment concerning the amount of underinsured motorist coverage that it was

 required to provide to the Danas. After both parties filed competing motions for

 summary judgment, the trial court entered an order granting summary judgment in

 favor of the Danas on 2 August 2018. Farm Bureau noted an appeal from the trial

 court’s order to the Court of Appeals.

¶7 In affirming the trial court’s order, the Court of Appeals began by noting that

 it had, in Gurley, “established a straightforward analysis to determine in what

 amount, if any, [underinsured motorist] coverage is available, given both the
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

insurance policy in question and our [underinsured motorist] statute.” N.C. Farm

Bureau Mut. Ins. Co., 42, 44 (2019) (citing Gurley, 139 N.C. App. at 180). The Court

of Appeals noted that, in “decid[ing] how much coverage the insured party or parties

are entitled to, we must consider ‘(1) the number of claimants seeking coverage under

the [underinsured motorist] policy; and (2) whether the negligent driver’s liability

policy was exhausted pursuant to a per-person or per-accident cap.’ ” Id. (quoting

Gurley, 139 N.C. App. at 181). More specifically, the Court of Appeals noted that it

had held in Gurley that

 [W]hen more than one claimant is seeking [underinsured
 motorist] coverage, as is the case here, how the liability
 policy was exhausted will determine the applicable
 [underinsured motorist] limit. In particular, when the
 negligent driver’s liability policy was exhausted pursuant
 to the per-person cap, the [underinsured motorist] policy’s
 per-person cap will be the applicable limit. However, when
 the liability policy was exhausted pursuant to the per-
 accident cap, the applicable [underinsured motorist] limit
 will be the [underinsured motorist] policy’s per-accident
 cap.

Id. (quoting Gurley, 139 N.C. App. at 181). In view of the fact that the parties had

stipulated that the Danas were entitled to collect some amount of underinsured

motorist coverage and the fact that “the negligent driver’s liability coverage was

exhausted pursuant to the per-accident cap,” the Court of Appeals held that “Gurley

mandates [that] the [Danas] are collectively entitled to receive coverage pursuant to

the per-accident cap of $300,000.” Id. As a result, the Court of Appeals affirmed the
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 trial court’s order. This Court granted Farm Bureau’s petition for discretionary

 review of the Court of Appeals’ decision.

¶8 Summary judgment is appropriate where “the pleadings, depositions, answers

 to interrogatories, and admissions on file, together with the affidavits, if any, show

 that there is no genuine issue as to any material fact and that any party is entitled

 to a judgment as a matter of law.” N.C.G.S. § 1A-1, Rule 56(c) (2019).

 Our standard of review of an appeal from summary
 judgment is de novo; such judgment is appropriate only
 when the record shows that there is no genuine issue of
 material fact and that any party is entitled to judgment as
 a matter of law. When considering a motion for summary
 judgment, the trial judge must view the presented evidence
 in the light most favorable to the nonmoving party. If the
 movant demonstrates the absence of a genuine issue of
 material fact, the burden shifts to the nonmovant to
 present specific facts which establish the presence of a
 genuine factual dispute for trial. Nevertheless, if there is
 any question as to the weight of evidence summary
 judgment should be denied.

 In re Will of Jones, 362 N.C. 569, 573–74 (2008) (cleaned up). In light of the parties’

 agreement that the present record does not reveal the existence of any material issue

 of disputed fact, the only issue that remains for our resolution in this case is whether

 one party or the other is entitled to the entry of judgment in its favor as a matter of

 law.

¶9 The North Carolina Motor Vehicle Safety and Financial Responsibility Act was

 enacted to ensure that every motor vehicle operator in North Carolina has “proof of
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 ability to be able to respond in damages for liability [ ] on account of accidents . . .

 arising out of the ownership, maintenance or use of a motor vehicle.” N.C.G.S. § 20-

 279.1(11) (2019). For that reason, the Financial Responsibility Act prohibits the

 registration of any vehicle in North Carolina unless the owner maintains “proof of

 financial responsibility” in the form of a policy of liability insurance, with such

 policies being required to conform to the requirements of N.C.G.S. § 20-309(b) and to

 enable the owner to pay damages in the amount of $30,000 “because of bodily injury

 to or death of one person in any one accident, and, subject to said limit for one person,

 in the amount of” $60,000 “because of bodily injury to or death of two or more persons

 in any one accident.” N.C.G.S. § 20-279.1(11). The Financial Responsibility Act’s

 requirement that “each automobile owner [must] carry a minimum amount of liability

 insurance providing coverage for the named insured as well as any other person using

 the automobile with the express or implied permission of the named insured” is

 written into every policy of automobile insurance that is subject to the Financial

 Responsibility Act as a matter of law. Integon Indem. Corp. v. Universal

 Underwriters Ins. Co., 342 N.C. 166, 167 (1995) (citing N.C.G.S. § 20-279.21(b)(2)).

 Nationwide Mut. Ins. Co. v. Chantos, 293 N.C. 431, 441 (1977).

¶ 10 According to N.C.G.S. § 20-279.21(b)(2), a policy of automobile liability

 insurance must protect the named insured or a permissive user

 against loss from the liability imposed by law for damages
 arising out of the ownership, maintenance or use of such
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 motor vehicle or motor vehicles with the [United States] . . .
 subject to limits exclusive of interest and costs, with
 respect to each motor vehicle as follows: [$30,000] because
 of bodily injury to or death of one person in any one
 accident and, subject to said limit for one person, [$60,000]
 because of bodily injury or death to two or more persons in
 any one accident, and [$25,000] because of injury to or
 destruction of property of others in any one accident.

 Although the manner in which the limitation of liability provisions of N.C.G.S. § 20-

 279.21(b)(2) is intended to operate is relatively clear, this case involves underinsured

 motorist, rather than liability, coverage.

¶ 11 The underinsured motorist coverage that is made available pursuant to

 N.C.G.S. § 20-279.21(b)(4) applies “when, by reason of payment of judgment or

 settlement, all liability bonds or insurance policies providing coverage for bodily

 injury caused by the ownership, maintenance, or use of the underinsured vehicle have

 been exhausted.” N.C.G.S. § 20-279.21(b)(4); see also Lunsford v. Mills, 367 N.C. 618,

 626 (2014) (stating that N.C.G.S. § 20-279.21 “was passed to address circumstances

 where the tortfeasor has insurance, but his coverage is in an amount insufficient to

 compensate the injured party for his full damages”) (cleaned up). In order to

 determine whether an injured party’s underinsured motorist coverage applies in

 accordance with the Financial Responsibility Act, a reviewing court must begin by

 ascertaining whether the tortfeasor’s vehicle was an “uninsured highway vehicle” and

 whether the tortfeasor’s liability policy has been exhausted. N.C.G.S. § 20-

 279.21(b)(4). In this case, the parties agree that Mr. Bronson’s vehicle is an
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 “underinsured highway vehicle” given that the sum of his limits of liability, which

 consisted of coverage in a per-person amount of $50,000 and a per-accident amount

 of $60,000, was less than the limits of underinsured motorist coverage applicable to

 Ms. Dana’s vehicle, which consisted of per-person coverage of $100,000 and per-

 accident coverage of $300,000, and that Mr. Bronson’s liability was exhausted by

 Integon’s proposed distribution of the $100,000 in per-accident coverage among the

 various claimants. Thus, since the underinsured motorist coverage available with

 respect to Ms. Dana’s vehicle applies, the next step in the required analysis is to

 calculate the amount of coverage that is available to the Danas under the Farm

 Bureau policy.

¶ 12 As we have already noted, the statutory provisions governing underinsured

 motorist coverage are contained in N.C.G.S. § 20-279.21(b)(4) which is, to say the

 absolute least, a lengthy and complicated statutory subsection that contains a

 considerable amount of language that seems to bear upon the proper resolution of the

 issue that is before us in this case. Among other things, N.C.G.S. § 20-279.21(b)(4)

 provides that “[t]he limits of such underinsured motorist bodily injury coverage shall

 be equal to the highest limits of bodily injury coverage for any one vehicle insured

 under the policy,” subject to certain maximum limitations that are not relevant in

 this instance. In addition, N.C.G.S. § 20-279.21(b)(4) provides that “the limits [of

 underinsured motorist coverage] shall be equal to the limits of uninsured motorist
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 bodily injury coverage”; that an “underinsured highway vehicle” is one in which “the

 sum of the limits of liability under all” applicable coverage “is less than the applicable

 limits of underinsured motorist coverage for the vehicle involved in the accident” or

 “the total amount actually paid to that person . . . is less than the applicable limits of

 underinsured motorists coverage for the vehicle involved in the accident”; and that a

 “highway vehicle” is not an “underinsured motor vehicle . . . unless the owner’s policy

 insuring that vehicle provides underinsured motorist coverage with limits that are

 greater than that policy’s bodily injury liability limits.” Furthermore, N.C.G.S. § 20-

 279.21(b)(4) provides that exhaustion of the available liability coverage occurs when

 either “the limits of liability per claim have been paid upon the claim” or, “by reason

 of multiple claims, the aggregate per occurrence limit of liability has been paid.”

¶ 13 In addition to these references to the issue of the limitation of liability

 contained in those portions of the relevant statutory provision defining when a vehicle

 is an “uninsured highway vehicle,” N.C.G.S. § 20-279.21(b)(4) states that “the limit

 of underinsured motorist coverage applicable to any claim is determined to be the

 difference between the amount paid to the claimant under the exhausted liability

 policy or policies and the limit of underinsured motorist coverage applicable to the

 motor vehicle involved in the accident” and that, in the event that the “claimant is an

 insured under the underinsured motorist coverage on separate or additional policies,

 the limit of underinsured motorist coverage applicable to the claimant is the
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 difference between the amount paid to the claimant under the exhausted liability

 policy or policies and the total limits of the claimant’s underinsured motorist

 coverages as determined by combining the highest limit available under each policy,”

 with “[t]he underinsured motorist limits applicable to any one motor vehicle under a

 policy [to not] be combined with or added to the limits applicable to any other motor

 vehicle under that policy.”

¶ 14 The repeated references to the issue of the limitation of liability contained in

 N.C.G.S. § 202-79.21(b)(4) prevent us from concluding that the relevant statutory

 language does not speak to the issue that is before us in this case. In light of the fact

 that the expressions “limit of liability” and “limits of liability” appear repeatedly in

 N.C.G.S. § 20-279.21(b)(4), it is difficult for us to conclude that these expressions have

 no meaning, a result that, if adopted by the Court, would allow insurers to have a

 significant degree of flexibility in drafting policies as they see fit. 1 Such an outcome

 is inconsistent with the consumer protection considerations that motivated the

 enactment of N.C.G.S. § 20-279.21. As a result, since the relevant statutory language

 is not silent, the determinative issue for purposes of this case is how the statutory

 1 Although numerous other statutory provisions that grant significant regulatory
 authority to the Commissioner of Insurance, none of them govern the manner in which the
 amount of underinsured motorist coverage is to be disbursed, a fact that reduces the
 likelihood that the General Assembly intended to remain silent with respect to the issue that
 is before us in this case.
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 references to the limitation of liability found in N.C.G.S. § 20-279.21(b)(4) should be

 construed.

¶ 15 As we have already suggested, the specific statutory language concerning the

 limitation of liability contained in N.C.G.S. § 20-279.21(b)(2), which clearly

 contemplates both a per-person and a per-accident limit of liability and makes the

 per-accident limit subject to the per-person limit, is not directly incorporated into the

 relevant provisions of N.C.G.S. § 20-279.21(b)(4). On the other hand, N.C.G.S. § 20-

 279.21(b)(4) clearly refers to both a “limit” and “limits” of liability. Although the

 absence of a direct incorporation of the concept of per-person and per-accident limits

 of liability as set out in N.C.G.S. § 20-279.21(b)(2) into the relevant portions of

 N.C.G.S. § 20-279.21(b)(4) and the use of both singular and plural language in

 N.C.G.S. § 20-279.21(b)(4) prevents us from concluding that the relevant statutory

 language is clear and unambiguous, such a determination is only the first step that

 must be taken in order to resolve the specific issue that is before us in this case.

¶ 16 “Legislative intent controls the meaning of a statute.” Brown v. Flowe, 349

 N.C. 520, 522 (1998) (quoting Shelton v. Morehead Mem’l Hosp., 318 N.C. 76, 81

 (1986)).

 The intent of the General Assembly may be found first from
 the plain language of the statute, then from legislative
 history, “the spirit of the act and what the act seeks to
 accomplish.” If the language of the statute is clear, the
 court must implement the statute according to the plain
 meaning of its terms so long as it is reasonable to do so.”
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 Lenox, Inc. v. Tolson, 353 N.C. 659, 664 (2001) (citation omitted) (quoting Polaroid

 Corp. v. Offerman, 349 N.C. 290, 297 (1998)). Courts should give effect to the words

 actually used in a statute and should neither delete words that are used nor insert

 words that are not used into the relevant statutory language during the statutory

 construction process. Lunsford v. Mills, 367 N.C. 618, 623 (2014). “[U]ndefined words

 are accorded their plain meaning so long as it is reasonable to do so.” Polaroid v.

 Offerman, 349 N.C. 290, 297 (1998), abrogated on other grounds by Lenox, Inc. v.

 Tolson, 353 N.C. 659 (2001). Finally, statutes should be construed so that the

 resulting construction “harmonizes with the underlying reason and purpose of the

 statute.” Electric Supply Co. v. Swain Elec. Co., 328 N.C. 651, 656 (1991). “The

 purpose of this State’s compulsory motor vehicle insurance laws, of which the

 underinsured motorist provisions are a part, was and is the protection of innocent

 victims who may be injured by financially irresponsible motorists,” Proctor v. N.C.

 Farm Bureau Mut. Ins. Co., 324 N.C. 221, 224 (1989), so that, in the event that the

 statutory language in which the Financial Responsibility Act is couched is

 ambiguous, the statute “will be liberally construed so that the [statute’s] beneficial

 purpose is accomplished.” Moore v. Hartford Fire Ins. Co. Grp., 270 N.C. 532, 535

 (1967).

¶ 17 The terms “limit of liability” and “limits of liability,” while not statutorily

 defined, do have well-understood meanings in insurance-related contexts, with there
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 being no reason that we can see for departing from those well-recognized meanings

 in this case. In addition, we are not persuaded, in light of the complexity of the

 language in which N.C.G.S. § 20-279.21(b)(4) is couched, that too much emphasis

 should be placed upon the General Assembly’s use of the singular, rather than the

 plural, in attempting to construe the relevant statutory language. Our construction

 of the relevant provisions of N.C.G.S. § 20-279.21(b)(4) will be undertaken in light of

 these two fundamental premises.

¶ 18 A careful reading of the relevant portions of N.C.G.S. § 20-279.21(b)(4) satisfies

 us that the references to “limit,” stated in the singular, occur in instances in which

 the General Assembly is referring to a single limit rather than to a collection of limits,

 such as the per-person and per-accident limits of liability that appear to be standard

 in most automobile liability insurance policies. Although one could argue that this

 language means that there is one, and only one, limit of liability that should be

 deemed applicable to any particular claim for all purposes, it seems to us that the

 relevant expression is equally, if not more, consistent with an interpretation of the

 relevant statutory language that assumes that the relevant limit of liability has

 already been determined on the basis of other considerations rather than as

 compelling the conclusion that any particular limit of liability should be deemed

 controlling for all relevant purposes. As a result, an examination of the literal

 statutory language suggests to us that the relevant provisions in N.C.G.S. § 20-
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 279.21(b)(4) tend to incorporate, at least by implication, the traditional use of both

 per-person and per-accident liability limits that insurers, policyholders, and policy

 makers are all familiar with and that are explicitly stated in N.C.G.S. § 20-

 279.21(b)(2) rather than requiring the use of a “one size fits all” rule focusing upon a

 single limit that is applicable in all situations.

¶ 19 In addition, the references to both per-person and per-accident liability limits

 in the underinsured motorist context does not seem to us to be foreclosed by the

 relevant statutory language. The use of the singular “limit” in the sentence with

 which the second paragraph of N.C.G.S. § 20-279.21(b)(4) begins strikes us as a pretty

 slender reed upon which to base a conclusion that the per-person and per-accident

 limits of liability may not both be applicable in determining the amount to be paid to

 any particular claimant (as compared to determining whether a particular vehicle is

 an “underinsured highway vehicle” or as to whether the amounts paid to all

 claimants, considered in their entirety, are subject to the per-person or the per-

 accident limit). We are unable to discern any reason why the General Assembly

 would have intended to preclude the use of both per-person and per-accident liability

 limitations in determining the maximum amount of underinsured motorist coverage

 that is available for payment to any individual claimant and believe that the most

 reasonable reading of the relevant statutory language provides for a common sense

 resolution of the dispute that is before us in this case, which is that, in cases involving
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 multiple claimants, the total amount of uninsured motorist coverage available to

 those claimants (considering both the available liability coverage and the available

 underinsured motorist coverage) is limited by the per-accident limit and that the total

 amount of coverage available to any individual claimant is constrained by the per-

 person limit.

¶ 20 Although the purpose of N.C.G.S.§ 20-279.21 is, of course, to provide protection

 for innocent victims of motor vehicle negligence, that fact does not inevitably require

 that one interpret the relevant statutory language to produce the maximum possible

 recovery for persons injured as a result of motor vehicle negligence regardless of any

 other consideration. Instead, the usual rules of statutory construction govern the

 interpretation of N.C.G.S. § 20-279.21(b)(4), subject to the caveat that the relevant

 statutory language should be construed to produce the greatest possible protection

 for the innocent victims of negligent conduct permitted by a reasonable interpretation

 of the relevant statutory language. In the absence of something in the relevant

 statutory language that otherwise compels such a result, we are unable to conclude

 that the General Assembly intended N.C.G.S. § 20-279.21(b)(4) to be applied in a

 manner that fails to take into account the existence of multiple limits of liability and

 places an injured party in a more favorable position than he or she would have

 occupied had the tortfeasor been fully insured. In light of the fact that the relevant

 statutory language can be construed in such a manner as to avoid such a result, this
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 case is appropriately resolved in such a manner as to make the total amount of

 underinsured coverage payments received by the claimants subject to per-accident

 limit of liability while limiting the amount received by any individual claimant by the

 per-person liability limit.

¶ 21 In reaching this conclusion, we do not believe that we are limited, in construing

 N.C.G.S. § 20-279.21(b)(4), to the options of making the per-person limit controlling

 for all purposes, to make the per-accident limit controlling for all purposes, to adopt

 the Gurley rule, or to treat the relevant statutory language as silent. Although a

 number of analytical approaches could conceivably be available to resolve the

 problem that this case presents for our consideration, it does not seem to us that

 treating the relevant statutory provision as silent can be squared with the numerous

 references to limits of liability that appear in N.C.G.S. § 20-279.21(b)(4), which must,

 as we have already noted, be construed as meaning something.2 In addition, we see

 no reason for concluding that the question that is before us in this case must be

 resolved by using either the per-person or per-accident limits to the exclusion of the

 other in light of either the relevant statutory language or the traditional

 understanding of the manner in which issues relating to limits of liability should be

 2 Admittedly, N.C.G.S. § 20-279.21(b)(4) does not directly and explicitly address the

 issue that is before us in this case. However, a statutory provision does not have to explicitly
 and directly address a particular issue in order for it to have a particular meaning. In re
 Ernst & Young, LLP, 363 N.C. 612, 616 (2009) (stating that, even if “the statute is ambiguous
 or unclear, we must interpret the statute to give effect to the legislative intent”).
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 resolved. Instead, a hybrid approach of the type that we have set out above seems to

 us to be most reflective of likely legislative and shareholder expectations as to the

 amount of coverage that should be available to any particular claimant.

¶ 22 Admittedly, the decision of the Court of Appeals in Gurley, upon which the

 Court of Appeals and the Danas have relied in this case, has been on the books for

 almost two decades without having been disturbed by the General Assembly. In

 ordinary circumstances, we would be inclined to give the General Assembly’s

 acquiescence in that decision near-controlling effect. However, we cannot agree that

 the canon of legislative acquiescence, Young v. Woodell, 343 N.C. 459, 462–63 (1996)

 (stating that “[t]he failure of the legislature to amend a statute which has been

 interpreted by a court is some evidence that the legislature approves of the court’s

 interpretation), should be deemed controlling in this instance given that the Court of

 Appeals described the rule that it adopted in Gurley as having the effect of avoiding

 an “interpret[ation] of the statute that . . . would result in defendants receiving more

 compensation than if [the tortfeasor] had been either fully insured or uninsured

 altogether.” Gurley, 139 N.C. App. at 182. In view of the fact that applying the rule

 adopted in Gurley to the facts in this case would have exactly the effect that the rule

 in question was explicitly intended to avoid, it is difficult for us to afford any weight

 in the interpretive process to the General Assembly’s failure to modify the relevant

 provisions of N.C.G.S. § 20-279.21(b)(4) to account for the likelihood that Gurley
 N.C. FARM BUREAU MUT. INS. V. DANA

 2021-NCSC-161

 Opinion of the Court

 would be applied in a mechanical manner to produce a result that Gurley itself

 appears to have been intended to avoid.

¶ 23 Thus, for all of these reasons, we conclude that the Court of Appeals’ decision

 in this case should be reversed. Although the principle enunciated in Gurley may

 well produce results that cohere with the likely legislative intent in many instances,

 the facts of this case demonstrate that its application can, in some instances, result

 in the payment of an amount that exceeds the per-person limit in cases involving

 multiple claimants. However, the relevant statutory language most readily supports

 the use of an approach that determines the amount to be paid to any particular

 claimant by treating the per-accident amount of underinsured motorist coverage as

 the total sum that is available to all of the claimants entitled to a share of the

 available underinsured motorist coverage, subject to the caveat that the amount of

 underinsured motorist coverage that is available to any individual claimant is limited

 to the per-person amount. As a result, the decision of the Court of Appeals is reversed

 and this case is remanded to Superior Court, Forsyth County, for the entry of a

 judgment declaring that the total amount of underinsured coverage made available

 to the Danas collectively is to be set at the per-accident limit, with no individual

 claimant to receive more than the per-person limit.

 REVERSED AND REMANDED.
 Justice EARLS concurring.

¶ 24 I join fully in the majority’s well-reasoned examination of N.C.G.S. § 20-

 279.21(b)(4) and in the conclusion that the provision incorporates “the traditional use

 of both per person and per accident liability limits that insurers, policyholders, and

 policy makers are all familiar with and that are explicitly stated in N.C.G.S. § 20-

 279.21(b)(2) rather than requiring the use of a particular limit of liability in any

 particular case.” Further, I agree with the majority that although the FRA must be

 construed in light of the General Assembly’s clear intent to protect innocent victims

 of automobile accidents from financial ruin, we must determine the meaning of

 N.C.G.S. § 20-279.21(b)(4) by applying our longstanding principles of statutory

 interpretation. Application of these principles in this case requires us to reverse the

 decision below. I write separately only to provide further explanation as to why I

 believe the effect of this Court’s decision is to overrule a settled precedent of the Court

 of Appeals, N.C. Farm Bureau Mut. Ins. Co. v. Gurley, 139 N.C. App. 178 (2000), and

 why I believe doing so is justified, notwithstanding the parties’ potential reliance

 interests which are implicated in departing from the rule endorsed in that case.

¶ 25 The rule as stated in Gurley was that when an insured seeks UIM benefits

 from his or her insurer after an accident caused by a negligent driver, the insured’s

 UIM benefits will be paid out up to the limit utilized by the negligent driver’s primary

 liability insurer. If the negligent driver’s primary liability insurer pays out on a per-
 N.C. Farm Bureau Mut. Ins. Co. v. Dana

 2021-NCSC-161

 Earls, J., concurring

 person basis, the insured’s UIM provider pays out on a per-person basis; if the

 negligent driver’s primary liability insurer pays out on a per-accident basis, the

 insured’s UIM provider pays out on a per-accident basis. Gurley, 139 N.C. App. at

 181. Thus, if the Gurley rule were applied in this case, the Danas would be entitled

 to collect up to the per-accident limit provided under their UIM policy, because Mr.

 Bronson’s insurer paid out on a per-accident basis. As a result, the Danas would

 receive payments in excess of the per-person limit contained in their own UIM policy.

¶ 26 As the majority correctly notes, this result plainly contravenes the purpose of

 the Gurley rule, which was crafted to avoid “giv[ing] defendants a windfall simply

 because they were involved in an accident with an underinsured motorist, as opposed

 to an insured or uninsured motorist.” 139 N.C. App. at 182–83. The approach the

 majority adopts instead subjects the Dana’s UIM claim to the per person coverage

 limit contained in their UIM policy, whether or not Mr. Bronson’s primary liability

 insurer pays out by applying the per-person or per-accident limit. Thus, even though

 it may be correct that “the principle enunciated in Gurley may well produce results

 that cohere with the likely legislative intent in many instances,” we should not hide

 from the fact that the legal rule Gurley announced has been supplanted.

¶ 27 Of course, this Court “is not bound by precedents established by the Court of

 Appeals.” N. Nat. Life Ins. Co. v. Lacy J. Miller Mach. Co., Inc., 311 N.C. 62, 76 (1984).

 Regardless of what the Court of Appeals held in Gurley, Gurley does not control our
 N.C. Farm Bureau Mut. Ins. Co. v. Dana

 2021-NCSC-161

 Earls, J., concurring

 disposition of the appeal presently before us. Our role when reviewing a matter “after

 a determination by the Court of Appeals . . . is to determine whether there is error of

 law[.]” N.C. R. App. P. 16. When tasked with discerning the meaning of a North

 Carolina statute, even one which has previously been interpreted by the Court of

 Appeals, we approach the task with fresh eyes, adopting the reasoning deployed and

 outcome reached by our colleagues below only to the extent we find their reasoning

 persuasive and their outcome correct.

¶ 28 Nevertheless, this Court should explain why we are overruling a lower court

 decision, rather than simply invoking our authority to do so. Although “[o]nly this

 Court may authoritatively construe the Constitution and laws of North Carolina with

 finality,” Lea Co. v. N.C. Bd. of Transp., 308 N.C. 603, 610 (1983), most legal questions

 are ably resolved in the first instance by the Court of Appeals. In many areas of the

 law, and given the way cases come to this Court, it may be a long time before this

 Court has cause to weigh in on the precise issue addressed in a decision below. During

 this intervening period after the Court of Appeals has decided an issue but before this

 Court has taken it up, the Court of Appeals’ interpretation of a state law controls,

 and parties reasonably order their affairs in accordance with the Court of Appeals’

 disposition of the issue.

¶ 29 In my view, such circumstances are present in this case. More than twenty

 years ago, the Court of Appeals was confronted with the question now before us and
 N.C. Farm Bureau Mut. Ins. Co. v. Dana

 2021-NCSC-161

 Earls, J., concurring

 concluded that “the applicable UIM limit under [N.C.G.S.] § 20–279.21(b)(4) will

 depend on two factors: (1) the number of claimants seeking coverage under the UIM

 policy; and (2) whether the negligent driver's liability policy was exhausted pursuant

 to a per-person or per-accident cap.” Gurley, 139 N.C. App. at 181. For the reasons

 incisively described by the majority, I believe the legal rule Gurley articulated is

 inconsistent with the applicable statutes and should be overruled. Still, I am

 cognizant of the potential unfairness which arises when we disturb an interpretation

 of a statutory provision that has governed for two decades, especially when the

 statutory provision being interpreted is, by law, necessarily incorporated into every

 contract for automobile insurance executed in this state. N.C. Farm Bureau Mut. Ins.

 Co., Inc. v. Lunsford, 378 N.C. 181, 2021-NCSC-83, ¶ 19 (“[A]ll automobile accident

 insurance policies executed in North Carolina necessarily incorporate North

 Carolina's FRA.”).

¶ 30 “[L]aws which subsist at the time and place of the making of a contract . . .

 enter into and form a part of it, as if they were expressly referred to or incorporated

 in its terms.” N.C. Ass’n of Educators, Inc. v. State, 368 N.C. 777, 789 (2016). This

 includes interpretations of statutory provisions pronounced by the Court of Appeals

 which are not inconsistent with any decision of this Court. Cf., Lynch v. Universal

 Life Church, 775 F.2d 576, 580 (4th Cir. 1985) (“The North Carolina Court of Appeals

 is a court of statewide jurisdiction, and its decisions are binding on state trial courts
 N.C. Farm Bureau Mut. Ins. Co. v. Dana

 2021-NCSC-161

 Earls, J., concurring

 in the absence of a conflicting decision by the North Carolina Supreme Court.”). When

 Farm Bureau and Ms. Dana entered into a contract for automobile insurance, the

 terms of their contract necessarily incorporated N.C.G.S. § 20-279.21(b)(4), which

 until today meant what the Court of Appeals said it meant in Gurley.

¶ 31 These reliance interests alone do not displace our “duty . . . to declare what the

 law is.” S. Ry. Co. v. Cherokee Cty., 177 N.C. 86, 88 (1919). But I do believe that these

 reliance interests justify us treating the Court of Appeals’ decision, and the rationale

 behind it, as weighty. When tasked with examining a decision of the Court of Appeals

 interpreting a North Carolina statutory provision which was decided a substantial

 period of time in the past and which is not in tension with any decision of this Court

 interpreting the same provision, I would accord that decision something akin to the

 respect we accord a prior precedent of this Court under the doctrine of stare decisis.

¶ 32 Under the doctrine of stare decisis, we adhere to prior decisions of this Court

 “both out of respect for the opinions of our predecessors and because it promotes

 stability in the law and uniformity in its application.” Wiles v. Construction Co., 295

 N.C. 81, 85 (1978). When considering whether or not to depart from prior precedent,

 I reiterate my view that we should start with the factors articulated by the United

 States Supreme Court, which include “the quality of [ ] reasoning [of the precedent

 being challenged], the workability of the rule it established, its consistency with other

 related decisions, developments since the decision was handed down, and reliance on
 N.C. Farm Bureau Mut. Ins. Co. v. Dana

 2021-NCSC-161

 Earls, J., concurring

 the decision.” State v. Hilton, 378 N.C. 692, 2021-NCSC-115, ¶ 78 (Earls, J.,

 dissenting) (alterations in the original) (quoting Janus v. Am. Fed’n of State, Cnty.,

 & Mun. Emps., Council 31, 138 S. Ct. 2448, 2478–79 (2018)).

¶ 33 Applying these factors to the present case, I would conclude that,

 notwithstanding any potential reliance interests, the rule articulated in Gurley

 should be displaced. I agree with the majority that the parties would have had cause

 to doubt that Gurley could sustain the outcome which resulted in the proceedings

 below, given the clear intent animating the Court of Appeals’ decision in that case.

 Regardless, whatever reliance interests may have existed are outweighed by the

 unmistakable fact that the Gurley rule is irreconcilable with the text, structure, and

 purpose of the FRA generally and N.C.G.S. § 20-279.21(b)(4) specifically, as the

 majority has persuasively explained. Therefore, I agree with the majority that the

 Court of Appeals’ decision in this case should be reversed. As a consequence, the

 interpretation of N.C.G.S. § 20-279.21(b)(4) offered in Gurley is no longer governing

 law and is no longer incorporated into automobile insurance contracts executed in

 this state.
 Justice BERGER concurring.

¶ 34 On appeal to this Court, Farm Bureau argues that the Court of Appeals erred

 when it affirmed the trial court’s determination that Mr. Dana and the Estate must

 be paid pursuant to the per accident limit in the parties’ UIM agreement. I agree

 with the majority that the trial court erred when it granted summary judgment in

 favor of Mr. Dana and the Estate, and the Court of Appeals erred when it affirmed

 the trial court’s decision.

¶ 35 I disagree with the majority about the reason why the claims in this case are

 governed by the per person limitations. The majority concedes that the North

 Carolina Motor Vehicle Safety and Financial Responsibility Act (FRA) only “seems”

 to apply here. In my opinion, the FRA does not address the particular question at

 issue in this case. Because the issue here is not addressed by the FRA, but is

 specifically addressed by terms of the insurance policy at issue, the terms of the policy

 must control. Therefore, I concur only in the result reached by the majority.

¶ 36 The FRA was enacted to ensure that every motor vehicle in the State has “proof

 of ability to respond in damages for liability[ ] on account of accidents . . . arising out

 of the ownership, maintenance or use of a motor vehicle[.]” N.C.G.S. § 20-279.1(11)

 (2019). The FRA prohibits the registration of any automobile in North Carolina

 unless the owner maintains “proof of financial responsibility” in the form of a liability

 insurance policy. Policies must conform with the requirements of N.C.G.S. § 20-
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 309(b), and demonstrate the owner’s ability to pay damages in the amount of

 ($30,000) because of bodily injury to or death of one person
 in any one accident, and, subject to said limit for one
 person, in the amount of . . . ($60,000) because of bodily
 injury to or death of two or more persons in any one
 accident[.]

 N.C.G.S. § 20-279.1(11) (2019) (emphasis added). In other words, if the operator of a

 motor vehicle causes an accident, the owner’s liability policy must be able to provide

 at least $30,000 in damages to each person and at least $60,000 per accident.

¶ 37 The requirement of the FRA that “each automobile owner [is] to carry a

 minimum amount of liability insurance providing coverage for the named insured as

 well as any other person using the automobile with the express or implied permission

 of the named insured” is written into every automobile policy subject to the FRA as a

 matter of law. Integon Indem. Corp. v. Universal Underwriters Ins. Co., 342 N.C. 166,

 168, 463 S.E.2d 389, 390–91 (1995) (citing N.C.G.S. § 20-279.21(b)(2)); Nationwide

 Mut. Ins. Co. v. Chantos, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977)). Pursuant

 to N.C.G.S. § 20-279.21(b)(2), general liability coverage must insure the vehicle’s

 owner or permitted operator

 against loss from the liability imposed by law for damages
 arising out of the ownership, maintenance or use of such
 motor vehicle or motor vehicles within the [U.S.] . . . subject
 to limits exclusive of interest and costs, with respect to
 each such motor vehicle, as follows: [$30,000] because of
 bodily injury to or death of one person in any one accident
 and, subject to said limit for one person, [$60,000] because
 of bodily injury to or death of two or more persons in any
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 one accident, and [$25,000] because of injury to or
 destruction of property of others in any one accident[.]

 N.C.G.S. § 20-279.21(b)(2) (emphasis added).

¶ 38 Farm Bureau correctly contends that the “subject to said limit for one person”

 language in N.C.G.S. § 20-279.21(b)(2) prohibits an injured individual from

 recovering more than the per person limit for general liability claims. This is true

 because recovery of two or more individuals in any one accident is limited to “said

 limit for any one person” under the plain language of the statute. See N.C.G.S. § 20-

 279.21(b)(2) ($60,000 is available “because of bodily injury to or death of two or more

 persons[.]”). The “subject to” language of N.C.G.S. § 20-279.21(b)(2) is superfluous

 under any other reading of the statute.1

¶ 39 However, the case before us does not concern the applicable limits of Ms.

 Dana’s general liability insurance. Rather, this case deals with her UIM policy. UIM

 1 When construing similarly worded statutes, other jurisdictions have held that if

 recovery is not limited by the per person limit, then the per accident limit would be the only
 limit applicable, regardless of the number of injured parties. See Farm Bureau Mut. Ins. Co.
 v. Buckallew, 246 Mich. App. 607, 618, 633 N.W.2d 473, 479 (2001) (holding that two
 claimants were limited to the “per person” limit because of “explicit policy language making
 the per occurrence limit ‘subject to’ the per person limit”); American Family Mut. Ins. Co. v.
 Gardner, 957 S.W. 2d 367, 369 (Mo. Ct. App. 1997) (limiting recoveries of multiple claimants
 to the $100,000 “per person” limit because the $300,000 per occurrence limit was “subject to”
 the “per person” limit); Livingston v. Farmers Ins. Co. of Washington, 79 Wash. App. 72, 79,
 900 P.2d 575, 578 (1995) (holding that, where the $300,000 per accident UIM limit was
 “subject to” the per person limit, the “policies unambiguously limit[ed]” the two claimants’
 recovery to $100,000 per person); Nationwide Mut. Ins. Co. v. Devlin, 11 Cal. App. 4th 81, 86,
 13 Cal. Rptr. 2d 795, 798 (1992) (limiting the two claimants’ recovery to the $100,000 per
 person limit because the $300,000 per accident limit was “subject to” the per person limit).
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 coverage under N.C.G.S. § 20-279.21(b)(4) applies “when, by reason of payment of

 judgment or settlement, all liability bonds or insurance policies providing coverage

 for bodily injury caused by the ownership, maintenance, or use of the underinsured

 highway vehicle have been exhausted.” N.C.G.S. § 20-279.21(b)(4). See also Lunsford

 v. Mills, 367 N.C. 618, 626, 766 S.E.2d 297, 303 (2014) (“Section 20-279.21 was passed

 to address circumstances where the tortfeasor has insurance, but his or her coverage

 is in an amount insufficient to compensate the injured party for his or her full

 damages.” (cleaned up)). Here, because Mr. Bronson’s exhausted general liability

 insurance was insufficient to fully compensate Mr. Dana and the Estate, both

 submitted claims under Ms. Dana’s UIM policy.

¶ 40 To determine whether an injured party’s UIM coverage applies under the FRA,

 we must consider whether (1) the tortfeasor’s automobile was an “underinsured

 highway vehicle” and (2) the tortfeasor’s liability policy was exhausted. N.C.G.S. §

 20-279.21(b)(4). If UIM coverage is triggered, then the amount of coverage must be

 calculated by determining “the difference between the amount paid to the claimant

 under the exhausted liability policy or policies and the limit of underinsured motorist

 coverage applicable to the motor vehicle involved in the accident.” Id.

¶ 41 An underinsured highway vehicle is “a highway vehicle with respect to the

 ownership, maintenance, or use of which, the sum of the limits of liability under all

 bodily injury liability bonds and insurance policies applicable at the time of the
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 accident is less than the applicable limits of underinsured motorist coverage for the

 vehicle involved in the accident and insured under the owner’s policy.” N.C.G.S. §

 20-279.21(b)(4). Here, the tortfeasor’s automobile qualifies as an “underinsured

 highway vehicle” because the sum of Mr. Bronson’s limits of liability ($50,000 per

 person and $100,000 per accident) was less than the applicable limits of UIM

 coverage for Ms. Dana’s vehicle ($100,000 per person and $300,000 per accident).

 Further, the tortfeasor’s liability policy was exhausted by Integon’s proposal to

 apportion the entire $100,000 per accident limit amongst the injured parties.

 Accordingly, Ms. Dana’s UIM coverage applies, and we must calculate the amount

 available under Ms. Dana’s UIM coverage. The question is whether the amount of

 coverage is governed by the FRA or the insurance policy.

¶ 42 “[W]hen a statute is applicable to the terms of an insurance policy, the

 provisions of the statute become a part of the policy as if written into it.” Bray v. N.C.

 Farm Bureau Mut. Ins. Co., 341 N.C. 678, 682, 462 S.E.2d 650 (1995). Thus, the

 policy is construed in accordance with its written terms unless a binding statute,

 regulation, or order requires a different construction. Allstate Ins. Co. v. Shelby Mut.

 Ins. Co., 269 N.C. 341, 345, 152 S.E.2d 436, 440 (1967); N.C. Farm Bureau Mut. Ins.

 Co., Inc. v. Lunsford, 2021-NCSC-83, ¶ 37, 378 N.C. 181, 196, 861 S.E.2d 705, 716

 (2021) (Barringer, J., dissenting).
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

¶ 43 The majority concedes the FRA does not specifically address this situation.

 Thus, we should follow our precedent. When the FRA language does not address a

 specific situation, we look to that of the policy. “Language in a policy of insurance is

 the determining factor in resolving coverage questions unless that language is in

 conflict with applicable statutory provisions governing such coverage.” Lanning v.

 Allstate Ins. Co., 332 N.C. 309, 312, 420 S.E.2d 180, 182 (1992). As the majority

 acknowledges, the plain language of N.C.G.S. § 20-279.21(b)(4) does not address

 whether the UIM per accident limit is subject to the UIM per person limit. There is,

 therefore, no conflict, and we must turn to the language of Ms. Dana’s UIM policy to

 determine whether the UIM per accident limit is subject to the UIM per person limit.

 See Lanning, 332 N.C. at 312, 420 S.E.2d at 182 (stating that where the policy

 language does not conflict with the FRA, the “[l]anguage in a policy of insurance is

 the determining factor in resolving coverage questions[.]”).

¶ 44 N.C.G.S. § 20-279.21(b)(4) makes multiple references to per person and per

 accident limits. However, the UIM subdivision does not contain the same “subject to

 . . . [per person] limit” language of N.C.G.S. § 20-279.21(b)(2). N.C.G.S. § 20-

 279.21(b)(4) provides, in relevant part, that UIM coverage is to be used “only with a

 policy that is written at limits that exceed those prescribed by subdivision (2) of this

 subsection . . . [t]he limits of such [UIM] coverage shall be equal to the highest limits

 of bodily injury liability coverage . . . the limits shall not exceed . . . ($1,000,000) per
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 person and . . . ($1,000,000) per accident[.]” N.C.G.S. § 20-279.21(b)(4) (emphasis

 added). Notably, N.C.G.S. § 20-279.21(b)(4) provides that the limit of UIM coverage

 is “the difference between the amount paid to the claimant under the exhausted

 liability policy . . . and the limit of [UIM] coverage applicable to the motor vehicle[.]”

 N.C.G.S. § 20-279.21(b)(4) (emphasis added).

¶ 45 Accordingly, because N.C.G.S. § 20-279.21(b)(4) does not address whether the

 UIM per accident limit is subject to the UIM per person limit, there is no conflict, and

 we must turn to the language of Ms. Dana’s UIM policy to determine whether the

 UIM per accident limit is subject to the UIM per person limit. See Lanning, 332 N.C.

 at 312, 420 S.E.2d at 182 (stating that where the policy language does not conflict

 with the FRA, the “[l]anguage in a policy of insurance is the determining factor in

 resolving coverage questions[.]”).

¶ 46 In interpreting the language of an insurance policy, we “must enforce the policy

 as written.” Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 492, 467 S.E.2d 34, 40

 (1996). In addition, “[o]ur interpretation of an insurance policy is based on the

 fundamental principle that the plain language of the policy controls.” N.C. Farm

 Bureau Mut. Ins. Co., Inc. v. Martin, 376 N.C. 280, 286, 851 S.E.2d 891, 895 (2020).

 “[I]f a policy is not ambiguous, then the court must enforce the policy as written and

 may not remake the policy under the guise of interpreting an ambiguous provision.”

 Mabe, 342 N.C. at 492, 467 S.E.2d at 40. However, if the language of the policy is
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 ambiguous, then “the doubts will be resolved against the insurance company and in

 favor of the policyholder.” Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246

 S.E.2d 773, 777 (1978); see also Lanning, 332 N.C. at 316–17, 420 S.E.2d at 184

 (concluding that where the FRA neither required nor prohibited intrapolicy stacking,

 policy language that was “clear, and capable of but one reasonable interpretation”

 controlled the outcome).

¶ 47 Here, the relevant portion of the UIM provision in Ms. Dana’s policy provides:

 Subject to [the] limit for each person, the limit of bodily
 injury liability shown in the Declarations for each accident
 for [UIM] Coverage is our maximum limit of liability for all
 damages for bodily injury resulting from any one accident.

¶ 48 The language of the UIM policy is “clear, and capable of but one reasonable

 interpretation[.]” Lanning, 332 N.C. at 317, 420 S.E.2d at 184. The policy plainly

 states that the UIM per accident limit was subject to the UIM per person limit, and

 that the proper amount of UIM coverage available was subject to the per person limit.

 Thus, the amount of UIM coverage available to Mr. and Ms. Dana for their injuries

 was subject to the per person limit. Because the policy language is clear, and because

 our courts may not “rewrite the contract or impose liabilities on the parties not

 bargained for[,]” Woods, 295 N.C. at 506, 246 S.E.2d at 777, the $100,000 person limit

 applies, reduced by the recovery under the tortfeasor’s policy. Thus, under Ms.

 Dana’s UIM policy, William T. Dana is entitled to $68,000 and the Estate of Pamela
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 M. Dana is entitled to $56,250.2

¶ 49 The majority dismisses looking to the policy language by waiving the false flag

 that our analysis “would allow insurers to have a significant degree of flexibility in

 drafting policies as they see fit.” The reality is that the insurance industry is heavily

 regulated in this state, insurance policies are virtually uniform, and policies must be

 approved by the Insurance Commission. See N.C.G.S. § 58-2-53 (2019) (“Whenever

 any provision of this Chapter requires a person to file rates, forms, classification

 plans, plans of operation, the Safe Driver Incentive Plan, or any other item with the

 Commissioner or Department for approval, the approval or disapproval of the filing

 is an agency decision[.]”). See also N.C.G.S. § 58-5-95 (“Deposits subject to approval

 and control of Commissioner”); N.C.G.S. § 58-7-60 (“Approval as a domestic insurer”);

 N.C.G.S. § 58-10-347 (“Provisional approval for a license”); N.C.G.S. § 58-35-45

 (“Filing and approval of forms and service charges”); N.C.G.S. § 58-36-20

 (“Disapproval; hearing order; adjustment of premium, review of filing”); N.C.G.S. §

 58-40-45 (“Disapproval of rates; interim use of rates”); N.C.G.S. § 58-45-30 (“Directors

 to submit plan of operation to Commission; review and approval; amendments;

 2 Both William T. Dana and the Estate of Pamela M. Dana are entitled to the UIM

 policy’s per person limit of $100,000, less the amount of Integon’s liability coverage ($32,000
 for William T. Dana and $43,750 for the estate of Pamela M. Dana). See N.C.G.S. § 20-279.21
 (b)(4) (“In any event, the limit of underinsured motorist coverage applicable to any claim is
 determined to be the difference between the amount paid to the claimant under the
 exhausted liability policy or policies and the limit of underinsured motorist coverage
 applicable to the motor vehicle involved in the accident.”).
 N.C. FARM BUREAU MUT. INS. CO. V. DANA

 2021-NCSC-161

 Berger, J., concurring

 appeal from Commissioner to superior court”); N.C.G.S. § 58-47-65 (“Licensing;

 qualification for approval”); N.C.G.S. § 58-47-175 (“Approval of advertising”);

 N.C.G.S. § 58-50-85 (“Approval of independent review organizations”); N.C.G.S. § 58-

 50-125 (“Health care plans; formation; approval; offerings”); N.C.G.S. § 58-50-131

 (“Premium rates for health benefit plans; approval authority; hearing”); N.C.G.S. §

 58-51-85 (“Group or blanket accident and health insurance; approval of forms and

 filing of rates”); N.C.G.S. § 58-51-95 (“Approval by Commissioner of forms,

 classification and rates; hearing; exceptions”); N.C.G.S. § 58-52-15 (“Forms and rate

 manuals subject to § 58-51-1; disapproval of rates”); N.C.G.S. § 58-56-21 (“Approval

 of advertising”); N.C.G.S. § 58-57-30 (“Forms to be filed with Commissioner; approval

 or disapproval by Commissioner”); N.C.G.S. § 58-58-220 (“Approval of viatical

 settlement contracts and disclosure statements”); N.C.G.S. § 58-65-132 (“Review and

 approval of conversion plan; new corporation”); N.C.G.S. § 58-72-50 (“Approval,

 acknowledgment and custody of bonds”); N.C.G.S. § 58-91-50 (“Product filing and

 approval”)

¶ 50 Because the trial court erred when it granted summary judgment to Mr. Dana

 and the Estate, and the Court of Appeals erred when it affirmed the trial court’s

 decision, I concur in the result reached by the majority.

 Chief Justice NEWBY and Justice BARRINGER join in this concurring

 opinion.